Thomas R. NICHOLSON, Plaintiff,

v.

WESTERN ELECTRIC COMPANY,
Defendant.

No. C–77–374–WS.

United States District Court,
M.D. North Carolina,
Winston-Salem Division.

March 23, 1982.

David C. Pishko, William G. Pfefferkorn and Jim D. Cooley, Winston-Salem, N.C., for plaintiff.

George R. Hodges, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION

GORDON, Chief Judge.

This matter is before the Court on a motion for summary judgment by defendant Western Electric Company (Western).

The plaintiff, Thomas Nicholson, brought this suit claiming that he had been discriminated against by Western on account of his age, race, and/or sex. From the complaint, discovery and other papers in the record, it appears that the plaintiff specifically claims that he was discriminated against on those bases in his failure to be promoted, the reduction of his performance rating, and his reclassification. Additionally, the plaintiff claims that he was retaliated against because he pursued his claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (ADEA). 42 U.S.C. § 2000e *et seq.*, 29 U.S.C. § 621 *et seq.*

Through the course of the litigation, the plaintiff has failed to pursue his claim concerning his failure to be promoted and, therefore, the Court deems this claim abandoned. If not abandoned, it is concluded that the claim is barred by the failure to timely file a complaint. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). This suit as characterized by the plaintiff in his brief and in the Final Pretrial Order claims that the plaintiff's rights have been violated by (1) unlawful demotion, and (2) retaliation.

The plaintiff was first employed by Western Electric in 1951 and in June, 1956, he was promoted to the position of Planning Engineer. Throughout his career as an Engineer, the plaintiff was assigned to the Product Engineering Organization of the defendant's North Carolina Works. In 1976, as part of a general reduction in its engineering work force at the North Carolina Works, the defendant demoted the plaintiff from Planning Engineer to Engineering Associate, a non-professional classification. At the time of this demotion, the plaintiff was forty-three years old. He contends that his age was a determining factor in the defendant's decision to lower his classification and that, therefore, this action violated his rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* The plaintiff further contends that his race (white) and his sex (male) were negative factors in the defendant's selection of those employees to be adversely affected by the force reduction and that, therefore, his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII) have also been violated. Finally, the plaintiff has asserted that, since the filing of this lawsuit, the defendant has engaged in a pattern of harassment and intimidation against him in violation of both the ADEA and Title VII.

The Age Act makes it unlawful "to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). The Fourth Circuit noted in *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir.1980), that courts frequently borrow the Title VII burdens of proof principles, as enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in assessing ADEA cases. The Court in *Smith* stressed that the burden remained on the plaintiff throughout to prove that age was a causative or determinative factor in treating the plaintiff differently. *Smith,* 632 F.2d at 337; *E.E.O.C. v. Baltimore and Ohio Railroad,* 632 F.2d 1107, 1110 (4th Cir.1980). Therefore, the Court in the instant case will analyze the Title VII and ADEA together since the plaintiff claims that the discrimination that he allegedly suffered was motivated either by his age (43 years), his sex (male), or his race (white).

In order to grant defendant's motion for summary judgment, the Court must examine the record in the light most favorable to the plaintiff and determine that he has established no genuine issue as to a material fact. *See, Smith,* 632 F.2d at 338.

Since the advent of *McDonnell Douglas* and its progeny, it has been an intellectual chore to sort through a Title VII action and determine whether it is a discriminatory impact or a discriminatory treatment case and how the case should proceed under either theory. In *Wright v. National Archives and Records Service,* 609 F.2d 702 (4th Cir.1979), the Fourth Circuit has gone a

long way towards alleviating judicial uncertainty by addressing procedural questions directly, and providing, or at least clarifying, a step by step framework for analysis. This Court will now try to follow the guidelines of *Wright* in analyzing this case.

(1) *Identify the Alleged Discriminatory Action*

The discriminatory actions upon which plaintiff's claims are based are identified by the plaintiff as (a) defendant's failure to promote plaintiff from the position of Occupational Engineer to Senior Engineer; (b) the reduction of plaintiff's performance rating from "top" to "good" and his subsequent demotion from Occupational Engineer to Engineering Associate on July 1, 1976; and (c) harassing of the plaintiff by the defendant in retaliation for plaintiff's charges of discrimination.

As noted above, the plaintiff has abandoned the promotion claim but is still pursuing relief for the demotion and the alleged retaliation.

(2) *The Prima Facie Case—Plaintiff's Burden*

At this point, the Court must determine whether plaintiff is proceeding under a discriminatory impact or a discriminatory treatment theory. It is true that the plaintiff may be proceeding under both theories, in the alternative, and he need not elect between them. *Wright,* 609 F.2d at 711. However, the mode of analysis is different for each theory so the Court must consider them separately. As in *Wright,* the plaintiff here appears to be using the disparate treatment approach without specifying it as such. The Court will, nonetheless, consider it first as a disparate impact claim. *See, Wright,* 609 F.2d at 711, n. 7.

■ *Disparate Impact.* The prima facie impact case may be proven in one of two ways. It may be established by statistical proof of gross underrepresentation of a protected group in an employment set. *Id.* at n. 9. Otherwise, the plaintiff must prove that defendant has a policy or practice which, though neutral on its face, nevertheless imposes a substantially disproportionate burden upon the protected group of which plaintiff is a member. *Id.* at 711.

Nicholson's claim, brought solely on his behalf, does not advance a statistical showing which would tend to indicate that either men, caucasians, or persons over forty were disproportionately represented in the set of those employees being demoted or discharged. Neither has the plaintiff advanced a policy or practice of Western which would tend to so burden the above-mentioned groups to which Nicholson belongs. Nicholson does point out that a few younger employees were designated as "high potential" and thereby spared from demotion. While the Court realizes that a prima facie impact case can be made out without involved statistical proof, *see, Mitchell v. Board of Trustees,* 599 F.2d 582, 585 n. 7 (4th Cir.1979), the impact doctrine cannot be based on sporadic or random acts. Rather the policy or practice must be part of defendant's "standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324 at 336, 97 S.Ct. 1843 at 1855, 52 L.Ed.2d 396 (1977); *Wright,* 609 F.2d at 712.

Given the record in the light most favorable to the plaintiff, the Court cannot conclude that he has alleged a prima facie case of discrimination of any sort under a disparate impact theory.

■ *Disparate Treatment.* The disparate treatment theory involves the plaintiff proving that an employer treats some people more favorably than others with an *intent to discriminate.* "Proof of discriminatory motive is critical, although it can in situations be inferred from the mere fact of differences in treatment." *Teamsters,* 431 U.S. at 335, n. 15, 97 S.Ct. at 1854, n. 15. To establish a prima facie treatment case, the claimant must show that he was a member of a protected group, that is, one classified by sex, race, or age. Then he must show that despite his qualifications, his

evaluations were downgraded and he was demoted while members outside his protected group, with less qualifications were not demoted.

A prima facie case is not particularly difficult to establish in a large force reduction situation such as this one. With the increased popularity of reverse discrimination suits, every employee is in a protected group by virtue of having a sex and a race. At the age of forty-three, plaintiff falls within the statutorily protected age group. It is also to be expected that in a major force reduction situation there will be employees outside one of claimant's categories who will not be demoted. Nonetheless, it is questionable whether plaintiff has sufficiently alleged that he was treated less favorably than employees outside his protected groups.

Western's force reduction plan was designed to affect first those employees with the lowest performance level and shortest service with the Company. Engineers were grouped into eight categories by their performance, with employees in each category being of similar performance levels. Category I included the highest performers and was the most protected group. Category VIII included the lowest performers and was the most vulnerable group. Within each category, engineers were ranked in order of length of service, the shortest service engineer being the most vulnerable.

There were thirty-one engineers, including Nicholson, in Category VII in 1976. Of those, there were only five employees under forty. The first two employees laid off in Category VII were under forty; two more of the under forty employees were transferred; the remaining under forty employee was not affected. (This remaining employee also happened to be a black which Western had designated as a high potential employee.) Of the twenty-six employees in Category VII over age forty, eight were not affected by the 1976 action, (one of whom, plaintiff notes, was a woman); six were retired; seven were reclassified to a lower level; one was transferred; and four were laid off. Given that all the employees in Category VII were at a similar performance level, the reduction actions of Western seemed to cut evenly across the age groups, skewing, if at all, in favor of those over forty.

Nonetheless, plaintiff contends that Western reduced his performance rating in 1976 in a discriminatory manner in order to drop him to a lower category, thereby making him vulnerable for the reclassification. He has alleged that, of all the affected employees, two under forty, one black under forty, and one fifty-seven year old female should have been reclassified before he was. The Court is not convinced that this super-selective comparison is enough to establish a prima facie treatment case in the face of such a major force reduction. However, the Court will continue through the *McDonnell-Douglas* analysis to demonstrate that plaintiff continues to fall short of carrying his burden.

(3) *Articulation of Non-discriminatory Reason—Defendant's Burden*

At this point, the defendant must come forward with non-discriminatory reasons for its actions sufficient to dispel the inference established by the prima facie case. This is not a burden of proof. Rather, it is one of production. *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). The defendant has come forward with two reasons, either of which could stand alone to dispel the inference of discrimination in the reduction of plaintiff's performance rating.

First, Western states that only the top 25 per cent of the engineers are given the highest rating. Because they grade on such a curve, a reduction in the total number of engineers would necessarily mean that fewer engineers could maintain the top rating, even if there were no change in any of the actual performance levels.

Second, the defendant relates a series of events in late 1975 where plaintiff's supervisors were not satisfied with his work on a special project. Plaintiff was eventually taken off the project because of the problems that he had encountered. These problems do not appear to be in any way related to his age, race, or sex.

The Court realizes, and Western admits, that performance evaluations of engineers are subjective to a large degree. However, neither Title VII nor the ADEA was designed to lock an employer into an inflexible hierarchy, incapable of taking advantage of the strengths of some employees or coping with their weaknesses. *See, Wright,* 609 F.2d at 715.

As to plaintiff's reclassification, Western has advanced legitimate reasons that are not based on discrimination. First, the majority of employees in Category VII were affected at least as harshly as plaintiff. The appearance given is that Western attempted to distribute the burden of the cut-back across the board age-wise, with the benefit of the doubt being given to the older employee. This appears sufficient to the Court to carry the burden of articulation. However, Western has proceeded to articulate a reason for each discreet decision regarding the four particular employees cited by the plaintiff.

The plaintiff complains that two white males in his performance category, ages twenty-nine and thirty, were transferred instead of being reclassified. The defendant responded that it had earlier offered plaintiff a transfer which he refused. Western was under the impression that plaintiff did not want a transfer. It is important to note that defendant need not prove that these were the reasons for its decisions. The burden is only one of articulation. This has been met.

Plaintiff complains that a thirty-one year old black in his performance category was not affected by the 1976 cut-back. Western's management had designated this employee as having high potential. It was their decision that he would be particularly valuable to the company in the future based on the admittedly subjective evaluations of his supervisors.

The fourth employee was a fifty-seven year old female. Western stated that her retention was needed "in the interest of business." That alone would not satisfy defendant's burden of production. If the employer were not required to articulate something more specific than "in the interest of business," the burden of production would be no more than a procedural hoop to jump through, with no substantive value whatsoever. The burden on the employer is light, but Courts must be careful to require a legitimate explanation for a business decision. To do otherwise, would cause the plaintiff to have to prove that there were no possible non-discriminatory reasons for the employer's action. The employer must advance a reason and allow the plaintiff to rebut that particular reason as pretextual. However, the defendant has gone beyond that rather meaningless explanation and shown, through exhibits, that the woman in plaintiff's performance category was not only thirteen years older than plaintiff, she also had four more years of seniority. Western has contended that age and years of service were factors mitigating in favor of employees in the decisions to reclassify or lay off.

It is the conclusion of the Court that the defendant has come forward with sufficient non-discriminatory reasons to dispel any inference of discrimination generated by plaintiff's prima facie showing.

(4) *Proof of Pretext—Plaintiff's Burden*

The Court in *Wright* describes the course of proof as follows:

"At this stage, a claimant's required proof of discriminatory motive has in effect been narrowed and focused upon the specific reasons advanced by the employer. The claimant need now only attack these, but the underlying requirement remains to prove that the real as opposed to now specifically 'articulated' reasons was a racially [or sex, or age] inspired intent to treat less favorably. On this issue, the evidence, both that of the claimant and the employer, may take a variety of forms, but since the issue is fundamentally one of a state of mind, the available evidence will typically, as here, be wholly circumstantial. *See McDonnell Douglas.*"

*Wright,* at 716.

The plaintiff contends that the Court cannot conclude on the basis of the evidence

8

before it that the reasons advanced by the defendant for its actions were the actual reasons and not pretextual. This misses the point of the burden shifting discussed above. It is the plaintiff's burden to prove that defendant's stated reasons are pretextual. The defendant has met its burden of articulation. In order for the plaintiff to survive a motion for summary judgment, he must produce some evidence which would support his claim that defendant's stated reasons are pretexts and *that the actual intent of the defendant is to discriminate against him because of his age, race, or sex.* It is here that plaintiff's failure to carry his burden is most dramatic. As the *Wright* court noted, a disparate treatment case is a difficult one to prove because of the problem of showing intent. A plaintiff may try to show discrimination by producing direct or circumstantial evidence that the employer intended to treat him less favorably for an impermissible reason. Intent is usually not capable of being proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But a defendant's intent may be inferred from surrounding circumstances. The plaintiff may offer any statement made or act done or omitted by a party whose intent is in issue, and all other facts and circumstances which indicate his state of mind. Plaintiff has offered no evidence, other than his opinion, that defendant reclassified him because of his age, race, or sex.

█ A company may have good or bad reasons for making personnel decisions. Its decisions may reflect poor business judgment or an animosity towards a particular employee. But, unless that decision is motivated by an age, racial, or sexual bias, it cannot support a Title VII or ADEA claim. Were the plaintiff allowed to survive a summary judgment motion on the facts he has alleged, an employer could be taken to trial for virtually any personnel move, particularly one which involved a major force reduction, as here. The anti-discrimination statutes were not meant to force an employer to litigate every personnel action.

This Court recognizes the subtle and insidious forms in which discrimination can occur. *McDonnell Douglas,* and the cases that have followed, have attempted to afford victims of discrimination a method of ferreting out evidence of improper motives without depriving companies of the ability to manage their affairs. In order to maintain the integrity of the statutes, plaintiffs must be held to the standards of proof which have evolved.

Viewed in the light most favorable to the plaintiff, the Court cannot conclude that the plaintiff has produced facts that would show that any personnel decisions regarding plaintiff were made with an intent to discriminate against him because of his age, race, or sex.

RETALIATION CLAIM

█ Retaliation by an employer for an employee's charge of discrimination is forbidden by 29 U.S.C. § 623(d) and 42 U.S.C. § 2000e–3(a). However, assuming that the acts complained of by the plaintiff are true, they could not amount to retaliatory conduct by Western.

First, plaintiff alleges that he was interrogated by defendant's security force. Yet, in plaintiff's deposition he states that the questionings were in response to complaints he had lodged against his fellow workers. Plaintiff had filed complaints with his superiors on several occasions, stating that co-workers were not doing their jobs properly. The transgressions complained of ranged from watching pornographic films to arranging fishing trips on company time. The company certainly had a right to question him about these matters. By his own admission, the "interrogations" arose, not out of his complaints of age, sex and race discrimination, but out of his dissatisfaction with the actions of his fellow workers. While the plaintiff may consider the company's treatment of this matter to be unfair, it is not the type of discrimination protected by Title VII or the ADEA. An employer may use bad business judgment, make unfair decisions, or even discriminate between its employees. Unless the discrimination is motivated by a prejudice against a protect-

ed classification, it cannot be redressed by Title VII or the ADEA.

Second, plaintiff complains that he was assigned to a drafting area for which he had no prior experience, and was required to report to an employee of lower rank. This was plainly a result of his reclassification, and there is no evidence that plaintiff was treated differently from other employees that had been reclassified. This is, in effect, asking the Court to consider the acts which it held to be non-discriminatory, and say that the same acts were retaliation for charging discrimination.

Third, the plaintiff complains that he was not given a raise for over two years after filing his claim. This, also, was an incident of the reclassification. The cut back forced the company to demote some employees. The Company, out of deference to its employees, did not reduce their pay when they were reclassified. To make the transition less painful, the company let the employees keep their salaries, but they were denied pay raises until such time as their pay came in line with those who had been in the lower classification.

Finally, the plaintiff asserts that the telephone line that he used in the drafting area was connected to a teletype terminal. The company replied that it was due to an innocent mistake in phone wiring. Regardless, it does not appear that the wiring could in any way harm the plaintiff. The teletype machine was not capable of monitoring or transcribing plaintiff's telephone conversations. There was simply no basis for claiming the act to be retaliatory.

### CONCLUSION

It is the conclusion of the Court that the plaintiff has not produced any evidence from which to conclude that the defendant Western had an age, sex, or racially inspired intent which contributed in any way to the decisions made regarding plaintiff's

performance rating or job reclassification. The Court further concludes that plaintiff has not alleged any act by the defendant that could be considered to be in retaliation for plaintiff's claims of age, sex and race discrimination. Summary judgment in favor of the defendant on all issues is, therefore, appropriate.