James Doyle LUPO, Plaintiff,

v.

**WYETH–AYERST LABORATORIES and American Home Products Corporation, Defendants.**

No. 1:96cv525 (TH).

United States District Court,
E.D. Texas,
Beaumont Division.

July 23, 1997.

---

John R. Craddock, Houston, TX, for Plaintiff.

M. Carter Crow & Lawrence H. Clore, Houston, TX, for Defendants.

## MEMORANDUM OPINION

HEARTFIELD, District Judge.

1. The court denies Plaintiff's Motion for New Trial [52].

### Background

2. Plaintiff, James Doyle Lupo, sued defendants, Wyeth–Ayerst Laboratories (Wyeth) and American Home Products Corporation (American), for discriminating against him based on age, in violation Section 21.051 of the Texas Labor Code (Section 21.051),[1] and for intentional infliction of emotional distress. Mem.Op. ¶ 1. Following the close of discovery, the court granted the motion of Wyeth and American for summary judgment on both of Lupo's claims. Mem. Op. ¶¶ 2, 54. It explained this disposition in a Memorandum Opinion.[2]

3. On June 5, 1997, ten days after the entry of a Rule 58 judgment, Lupo filed a Motion for New Trial (Motion) as to his age discrimination claim.[3] *Compare* Mem.Op. (filed May 21, 1997) *with* Mot. (filed June 5, 1997). *See generally* Fed.R.Civ.P. 6. In doing so, he essentially sought reconsideration of the summary judgment ruling on that cause of action pursuant to Federal Rule of Civil Procedure 59(e) (Rule 59(e)). *Compare* Mot. at 1, 15 *with Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993) *and Beanal v. Freeport–McMoRan, Inc.,* Civ.A. No. 96–1474, 1996 WL 476879, at *1 (E.D.La. Aug.22, 1996).

4. Eighteen marked exhibits and a June 5, 1997, affidavit by Lupo (June 5 affidavit)

---

1. Section 21.051 reaches only "discrimination based on age ... against an individual 40 years of age or older." *Adams v. Valley Fed. Credit Union,* 848 S.W.2d 182, 186 (Tex.App.—Corpus Christi 1992) (writ denied).

2. Wyeth and American received summary judgment on the age discrimination claim because Lupo failed to present proof sufficient to create a genuine issue as to whether or not their explanation for his termination, a reduction-in-force (RIF) by Wyeth, was a pretext. *See* Mem.Op. ¶¶ 34–45. They secured summary judgment on

the intentional infliction of emotional distress claim because no evidence raised a genuine issue as to whether or not they had behaved outrageously toward Lupo. *See* Mem.Op. ¶¶ 49–53.

3. Although the Motion concluded with a request for the court to deny the summary judgment motion "in its entirety," Pl.'s Mot. for New Trial at 15 [hereinafter Mot.], it made no specific attacks on the decision to grant summary judgment to Wyeth and American on the intentional infliction of emotional distress claim, *see* Mot. at 1–15.

were attached to the Motion.[4] *See* Mot. Exhibits 3, 5, 8,[5] 9 [6] and 10,[7] as well as the June 5 affidavit, had never appeared in the summary judgment record.[8] *Compare* Summ.J.Resp. (Exs. A, I and portions of Selected Product Reports) *and* Rejoinder (Exs. 4, 8 and 15) *with* Mot. (Exs. 1, 2, 4, 6, 7, 11, 12, 13, 14, 15, 16, 17 and 18). Lupo had intended to introduce Exhibits 5 and 9 at trial. *Compare* Mot. (Exs. 5 and 9) *with* Am. Ex. List (Exs. 38 and 171).

5. Other exhibits to the Motion included both materials in the summary judgment record and new evidence. Exhibits 1, 7, 11, 12, 13, 14, 15,[9] and 18 [10] presented portions of Selected Product Reports that Lupo had attached to the Response or Rejoinder, as well as parts of Selected Product Reports that he had not affixed to either the Response or Rejoinder. *Compare* Summ.J.Resp. (Selected Product Report excerpt labeled DL 01173) *with* Mot. (Ex. 1). *Compare* Summ. J.Resp. (Selected Product Report excerpt labeled DL 01163) *with* Mot. (Ex. 7). *Compare* Summ.J.Resp. (excerpts of Selected Product Reports labeled Wyeth 12684, DL 01144, Wyeth 14378 and DL 01156) *and* Rejoinder (Exs. 4 and 8) *with* Mot. (Exs. 11–15). *Compare* Summ.J.Resp. (excerpts of Selected Product Reports labeled DL 01189, DL 01163, DL 01187, DL 01161, DL 01185, DL 01159, DL 01183, DL 01158, DL 01181, DL 01157, DL 01179, DL 01156, DL 01175, DL 01153, DL 01173, DL 01152 and DL 01144) *and* Rejoinder (Exs. 4 and 8) *with* Mot. (Ex. 18). Lupo had planned to proffer part of Exhibit 12 at trial. *Compare* Mot. (Ex. 12) *with* Am.Ex.List. (Ex. 175).

6. Exhibit 4 included not only papers that Lupo had not submitted before but also parts of Selected Product Reports he had affixed to the Response. *Compare* Summ.J.Resp. (excerpts of Selected Product Reports labeled DL 01179 and DL 01156) *with* Mot. (Ex. 4). Lupo had intended to present all of the documents comprising Exhibit 4 as a

---

4. Besides seventeen marked exhibits, the following unmarked materials had been affixed to the Lupo's Response to Defendant's Motion for Summary Judgment (Response): an affidavit by Lupo, the 251–page deposition of William Bartek, the 226–page deposition of Patricia Redd and various other documents. *See* Resp. to Def.'s Mot. for Summ.J. [hereinafter Summ. J.Resp.]. Eighteen marked exhibits had been attached to his Rejoinder to Defendants' Reply to *Response to Motion for Summary Judgment* (Rejoinder). *See* Doyle Lupo's Rejoinder to Defs.' Reply to Resp. to Mot. for Summ.J. [hereinafter Rejoinder]. (Nothing had been placed behind the tab for Exhibit 6 to the Rejoinder. *See* Rejoinder (tab for Ex. 6). The document that Lupo apparently had intended to designate as Exhibit 19 to the Rejoinder was unmarked. *See* Rejoinder (materials appearing behind tab for Ex. 18).)

5. According to Wyeth and American, Exhibit 8, a Determination from the United States Equal Employment Opportunity Commission (EEOC) regarding Wyeth's performance improvement program, was never disclosed by Lupo during this litigation. Resp. to Pl.'s Mot. for New Trial at 4 n. 3 [hereinafter Resp.]; *cf.* Am. to Joint Final Pre–Trial Order (Am. Ex. List of Pl. [hereinafter Am. Ex. List] (nowhere identifying the EEOC Determination as a trial exhibit)). *See generally* Fed.R.Civ.P. 37(c)(1).

6. Exhibit 9, a list of the 102 sales representatives hired in 1994 whom Wyeth released as part of the RIF, derived from Exhibit J to the Response.

*See* Mot. (Aff. of John R. Craddock). *See generally* Mem.Op. ¶ 10.

7. Exhibit 10, a summary chart relating the ages, years of service and territory numbers of the sales representatives in Lupo's sales region terminated in the RIF, conveyed information appearing in Exhibits J and K to the Response. *Compare* Summ.J.Resp. (Exs. J and K) *with* Mot. (Ex. 10).

8. Lupo apparently knew about all of the matters related in the June 5 affidavit before he responded to the summary judgment motion. *See* Mot. (Aff. of James Doyle Lupo).

9. Exhibits 11, 12, 13, 14 and 15 presented eight additional sales history comparisons. *See* Mot. (Exs. 11–15). (One of the comparisons involved two persons responsible for the same sales territory during different periods of time. *See* Mot. (Ex. 14). Another one received no mention in the Motion. *Compare* Mot. at 12–13 *with* Mot. (Ex. 13 (comparison between Lupo and Chuck Hartgraves).) Although Lupo cited the Selected Product Report excerpts providing the basis for the each comparison, *see* Mot. (Exs. 11–15 (charts offering sales figure comparisons)), some of them appeared neither as part of the Motion nor as part of the summary judgment record. *See* Summ.J.Resp.; Rejoinder; Mot. (Exs. 11–15 (excerpts from Selected Product Reports)).

10. The Motion never alluded to Exhibit 18. *See* Mot. at 1–15.

single trial exhibit.[11] *Compare* Mot. (Ex. 4) *with* Am.Ex.List (Ex. 35).

7. All portions of Selected Product Reports accompanying the Motion, *see* Mot. (Exs. 1, 2, 3, 4, 6, 7, 11, 12, 13, 14, 15 and 18)—had been disclosed to Lupo before the summary judgment phase. *Compare* Pl.'s Mot. to Compel Produc. of Docs. (filed Mar. 3, 1997) (seeking Selected Product Reports for each sales territory in Lupo's sales region for 1991, 1992, 1993 and 1994 and the ranking for each sales territory in Lupo's sales region for 1991, 1992, 1993 and 1994) *and* Disc. Report (filed Apr. 16, 1997) (summarizing the parties' April 4, 1997, oral report of their resolution of Plaintiff's Motion to Compel Production of Documents) *with* Def.'s Mot. for Summ. J. and Br. in Supp. Thereof (filed Apr. 11, 1997).

8. Lupo failed to explain why he was submitting some materials for the first time in the Motion. *See* Mot.

9. Besides presenting nineteen exhibits, the Motion cited evidence in the summary judgment record to which Lupo had previously never pointed.[12] *Compare* Mot. at 5, 10, 11 (citing Bartek Dep. at 19, 23–25, 85, 92, 94–96) *with* Summ.J.Resp. at 4–5, 10 (citing Oral Dep. of William Bartek at 35–36, 61–62, 108–12, 137 [hereinafter Bartek Dep.]) *and* Rejoinder (citing Bartek Dep. at 36, 61–62, 108–12, 137). *Compare* Mot. at 3 (citing Exs. 1 and 2) *with* Resp. (nowhere pointing to excerpts of Selected Product Reports labeled DL 01173 and DL 01152) *and* Rejoinder (same). *Compare* Mot. at 4 (citing Ex. 4) *with* Resp. (nowhere pointing to excerpts of Selected Product Reports labeled DL 01179 and DL 01156). *Compare* Mot. at 5 (citing Ex. 7) *with* Resp. (nowhere pointing to a Selected Product Report excerpt labeled DL 01163) *and* Rejoinder (same). Lupo provided no reason for why he had not pointed to these items before. *See* Mot.

### *Reconsideration*

10. A court possesses "considerable discretion in deciding whether to reopen

a case in response to a motion for reconsideration arising under" Rule 59(e). *Lavespere,* 910 F.2d at 174. Motions for reconsideration "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Waltman v. International Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989); *see Williams v. Mississippi Action for Progress, Inc.,* 824 F.Supp. 621, 623–24 (S.D.Miss.1993). They, therefore, "should not be used to raise arguments that could, and should, have been made before the entry of judgment ... [or] to re-urge matters that have already been advanced by a party." *In re Liljenerg Enter.,* Civ.A. No. 97–0456, 1997 WL 222497, at *2, *3 (E.D.La. May 1, 1997); *see State v. Sprint Comm. Co.,* 899 F.Supp. 282, 284 (M.D.La.1995) ("[L]itigants are expected to present their strongest case when the matter is first considered. A motion to reconsider based on recycled arguments only serves to waste the resources of the court."); *Resolution Trust Corp. v. Holmes,* 846 F.Supp. 1310, 1316 (S.D.Tex.1994) (motion to reconsider is not "the proper vehicle for rehashing old arguments or advancing legal theories that could have been presented earlier"). When a party moving for reconsideration offers new evidence, a court must address the following, dual concerns: "the need to bring litigation to an end and the need to render just decisions on the basis of all the facts." *Lavespere,* 910 F.2d at 174.

[T]o strike the proper balance between these competing interests ... [it] should consider, among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the [moving party] ... before [he or] she responded to the ... motion [that he or she seeks to have reconsidered], and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

---

**11.** The Motion only focused on one of the new items found in Exhibit 4, a letter from Bartek to Jill Klock. *See* Mot. at 4.

**12.** Although the information in Exhibit 6 to the Motion appeared as Exhibit 4 to the Rejoinder, the contention it supported in the Motion differed from the one it supported in the Rejoinder. *Compare* Rejoinder at 3 *with* Mot. at 5.

*Id.; accord Snavely v. Nordskog Elec. Vehicles "Marketeer",* 947 F.Supp. 999, 1011 (S.D.Miss.1995). *See generally Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972) ("A party opposing a motion for summary judgment simply cannot make a secret of his [or her] evidence until the trial, for in doing so he [or she] risks the possibility that there will be no trial. A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried.").

### Discussion

#### Lupo's New Evidence

■ 11. Wyeth and American maintain that the court should ignore the new evidence attached to the Motion because Lupo "did not submit [this] ... evidence in opposition to [the] ... motion for summary judgment at the time the Court considered the motion [and because] ... [he] has not established that the Court should consider the new evidence now." [13] Resp. at 1; *see also* Resp. at 4.

12. The balance of relevant criteria tips in favor of the position taken by Wyeth and American. First, Lupo gives no explanation for why he failed to include evidence he offers for the first time in the Motion in either the Response or Rejoinder. Second, he had access to the documentary materials and had knowledge of all matters discussed in the June 5 affidavit when he prepared the Response. Third, consideration of the additional items, some of which were never identified as trial exhibits, would unfairly prejudice Wyeth and American. Fourth, in contrast to the typical opponent of a summary judgment motion, Lupo received *two* opportunities to submit evidence. Finally, the new proof fails to provide Lupo with enough evidence to raise a genuine issue as to whether or not the RIF was a pretext for unlawful age discrimination. For example, to bolster his charge that changes to sales data by Wyeth exposes the RIF as a pretext, Lupo provides the sales records of

eight more people for various products, which increases the total number of sales history comparisons offered by him from 2 to 10. *Compare* Mem.Op. ¶ 37 *with* Mot. at 12–13 (discussing Exs. 11–15). This additional showing, however, is insufficient to remedy the particular evidentiary problem associated with his contention regarding Wyeth's sales figures to which it goes. *See, e.g., Kuhn v. Ball State Univ.,* 78 F.3d 330, 332 (7th Cir.1996); *cf. Hayden v. La–Z–Boy Chair Co.,* 838 F.Supp. 384, 390–91, *aff'd,* 9 F.3d 617 (7th Cir.1993), *cert. denied,* 511 U.S. 1004, 114 S.Ct. 1371, 128 L.Ed.2d 47 (1994). *See generally Walther v. Lone Star Gas Co.,* 952 F.2d 119, 124 (5th Cir.1992); *Wilkins v. University of Houston,* 654 F.2d 388, 410 (5th Cir.1981) ("the day is long past ... when we proceed with any confidence toward broad conclusions from crude and incomplete statistics"), *vacated on other grounds,* 459 U.S. 809, 103 S.Ct. 34, 74 L.Ed.2d 47 (1982).

13. After reviewing the pertinent facts, the court decides against considering Lupo's new evidence. *See Copsey v. Swearingen,* 36 F.3d 1336, 1348 (5th Cir.1994); *Russ v. International Paper Co.,* 943 F.2d 589, 593 (5th Cir.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992); *Waltman,* 875 F.2d at 473–74; *In re Shivers,* 900 F.Supp. 60, 64–66 (E.D.Tex.1995), *aff'd,* 96 F.3d 120 (5th Cir.1996).

#### Lupo's Arguments

14. Lupo raises numerous challenges to the Memorandum Opinion's discussion of his age discrimination claim. Many of these prove unavailing because they either rehash arguments rejected in the Memorandum Opinion or introduce new arguments available to Lupo when he filed his Response or Rejoinder. *See Liljeberg Enters.,* 1996 WL 257569, at *2, *3; *Sprint,* 899 F.Supp. at 284; *Holmes,* 846 F.Supp. at 1316.

15. While a large proportion of Lupo's arguments for reconsideration prove unavail-

---

**13.** Wyeth and American erroneously believe that all of the materials attached to the Motion were never filed before. *See* Resp. at 1. Because some of the profferings accompanying the Motion appeared in the summary judgment record, the court considers the request that it refrain from considering Lupo's new evidence only as to those items presented for the first time in the Motion.

ing because they rest on inappropriate grounds, nine of them merit discussion. *Cf. International Marine Carriers v. Oil Spill Liab. Trust Fund,* 914 F.Supp. 149, 152 (S.D.Tex.1995).

16. First, Lupo maintains that the court wrongly looked to cases interpreting the Age Discrimination in Employment Act (ADEA), a federal law, to guide its analysis of his claim under Section 21.051, a state statutory provision. Mot. at 7; *see* Mot. at 2. This assertion lacks merit because it runs counter to judicial precedent.[14] *See Pina v. Texas Commerce Bank,* No. EP–95–CA–120–H, 1995 WL 857214, at *2 (W.D.Tex. Nov.13, 1995) (citing cases); *Trico Technologies Corp. v. Rodriguez,* 907 S.W.2d 650, 652–53 (Tex.App.—Corpus Christi 1995) (no writ) (same).

17. Second, Lupo for the first time objects to the admissibility of some of the evidence submitted by Wyeth and American during the summary judgment phase. *See* Mot. at 3, 6, 10. This challenge comes too late. *See Kjorlie v. Lundin,* Civ.A. No. 91–4040–DES, 1993 WL 142689, at *2 (D.Kan. Apr.26, 1993); *Michigan State Podiatry Ass'n v. Blue Cross and Blue Shield of Mich.,* 681 F.Supp. 1239, 1243 (E.D.Mich. 1987); *cf. McCloud River R.R. v. Sabine River Forest Prods., Inc.,* 735 F.2d 879, 882 (5th Cir.1984). It, moreover, merits no consideration as it represents nothing more than an argument Lupo could, and should, have made earlier. *See Liljeberg Enter. v. Emmett,* 1996 WL 257569, *2 (May 16, 1996); *Holmes,* 846 F.Supp. at 1316.

18. Third, Lupo contends that the court wrongly concluded that Smith–Puig was more "qualified" than him.[15] Mot. at 1–2.

In doing so, he fails to recognize that his evidence relating to sales representative job performance addressed matters distinct from the factors comprising Wyeth's definition of "qualified." As such, his proof created no genuine issue as to whether or not he was more "qualified" than Smith–Puig.[16] *See Equal Employment ·Opportunity Comm'n v. Texas Instruments, Inc.,* 100 F.3d 1173, 1183–84 (5th Cir.1996) (affirming grant of summary judgment to defendant) (as plaintiff's "showing is premised on … data irrelevant to the RIF decisions," it creates no genuine issue on the matter of pretext); *Bradford v. Norfolk Southern Corp.,* 54 F.3d 1412, 1421 (8th Cir.1995) (affirming grant of judgment as a matter of law to defendant) (supervisor's statements about the RIF insufficient to raise a fact issue); *cf. Ruiz v. Whirlpool, Inc.,* 12 F.3d 510, 514 (5th Cir. 1994) (affirming grant of summary judgment).

19. Fourth, in support of his position that genuine issues of material fact exist, Lupo points to materials in the summary judgment record that neither his Response nor Rejoinder mentioned. He thereby implicitly takes the untenable position that the court should have reviewed materials that he presented during the summary judgment phase but never specifically cited. *See Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996); *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 (5th Cir.1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992); *see also Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 406 (6th Cir.1992) ("To try to review the complete collection of

---

14. Lupo's current position regarding the ADEA's applicability contrasts with his initial view on that matter. *See* Summ.J.Resp. at 3–13 (primarily citing ADEA cases); Rejoinder at 4–10 (same). Moreover, at several junctures in the Motion, he seems to stray from it. *See* Mot. at 2, 7, 10, 15.

15. Lupo mischaracterizes the issue of whether or not he was more "qualified" than Smith–Puig as a question of law. *Compare* Mot. at 2 *with Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir.1996) *and Lacour v. Stauffers Chemicals,* No. H–88–3471, 1990 WL 289506, at *2 (S.D.Tex. June 27, 1990).

16. Lupo seems to maintain that "Wyeth['s] fail[ure] to identify what constituted a 'low salary bonus for the year in question'" bars consideration of evidence that salary bonuses served as criteria for determining which sales representatives to include in the RIF. *See* Mot. at 10. However, exactly what constitutes a "low" salary bonus is immaterial; all that matters is that size of salary bonus awards helped to determine whom to release. *See, e.g., Gibson v. Rich,* 44 F.3d 274, 277 n. 4 (5th Cir.1995).

exhibits, or to read each line of every page of all submitted depositions—much of which may not even be relevant to the real issues at hand—this represents to courts at both the trial and appellate levels an unrealistic ideal, an unaffordable luxury."). Moreover, his reliance on that evidence equates with seeking reconsideration based on arguments available to him previously, which is *verboten. See Liljeberg Enter.,* 1996 WL 257569, at *2; *Holmes,* 846 F.Supp. at 1316.

20. Fifth, Lupo maintains that *Stanley Stores, Inc. v. Chavana,* 909 S.W.2d 554 (Tex. App.—Corpus Christi 1995) (writ denied), a recent Texas appellate decision, establishes that he produced enough evidence to rebut the motion for summary judgment. *See* Mot. at 7–8. He, specifically, suggests that, under *Stanley Stores,* proof disclosing a RIF and poor job performance as the reasons for an older plaintiff's firing "is sufficient [for] ... a fact finder [to] ... reasonably infer age discrimination." Mot. at 8. This claim misrepresents *Stanley Stores.* In that case, the plaintiff proved his age discrimination claim by presenting more than just evidence showing a RIF and poor job performance as the stated justifications for his discharge.[17] *See Stanley Stores,* 909 S.W.2d at 560–61 (affirming trial court's finding of age discrimination).

21. Sixth, Lupo believes that the court acted inconsistently when it deemed as undisputed evidence that Wyeth had selected 102 sales representatives for termination in the RIF after deciding on which individuals to release in the RIF for poor performance, as well as evidence that the average age of

Wyeth's sales force increased after the RIF, but refused to find the list of 376 sales representatives subject to the RIF (RIF list) adequate to support his claim that Wyeth had manipulated hiring decisions made after March 1, 1994, to insure an increase in the post–RIF salesforce's average age. *See* Mot. at 9. Lupo overlooks how these proferrings differed. The materials from Wyeth and American expressly conveyed the information they purported to relate. Lupo, in contrast, provided no specific proof even intimating that hiring decisions made after March 1, 1994, had depressed the sales force's average age.[18]

22. Seventh, pointing to footnote 20 of *Thornbrough v. Columbus and Greenville Railroad Company,* 760 F.2d 633, 646 n. 20 (5th Cir.1985), Lupo proclaims that he "is not required to prove that [Wyeth's] ... reorganization as a whole was pretextual." Mot. at 10. Footnote 20, however, fails to sustain his assertion. It announces that statistical evidence showing an increase in the average age of the defendant's workforce following a RIF, alone, does not warrant summary judgment for the defendant.[19] *Thornbrough,* 760 F.2d at 646 n. 20. (defendant's evidence showing that the average age of its employees rose after the RIF "is probative of the age discrimination issue, ... not dispositive"). It, therefore, in no way affects the need for Lupo to present an adequate sample of sales figure comparisons from the appropriate population—all sales representatives included in Wyeth's national performance review, *see, e.g., Kuhn,* 78 F.3d at 332–33; *Walther,* 952 F.2d at 124—and to subject that sample to a sufficiently rigorous analysis if he wants

---

**17.** Lupo's interpretation of *Stanley Stores* conflicts with the law of age discrimination. Specifically, under his view, the final step of the burden-shifting framework announced in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the plaintiff must prove by a preponderance of evidence that the defendant's legitimate non-discriminatory reasons are pretexts for discrimination, becomes irrelevant. *Compare* Mot. at 8 *with Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 149 (5th Cir.1995), *cert. denied,* 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996).

**18.** Lupo's submission of the RIF list to support his theory that Wyeth had followed an employ-

ment strategy designed to induce a drop in the salesforce's average age created the impression that he expected the court to extract the 102 relevant persons from the RIF list and to use that information, along with other data, to determine the average age of Wyeth's salesforce before March 1, 1994. *See* Mem.Op. ¶ 42 and note 30.

**19.** The court based its finding that Wyeth and American had carried their summary judgment burden on Lupo's age discrimination claim on evidence other than the chart showing a rise in the average age of Wyeth's salesforce following the RIF. *Compare* Mem.Op. ¶¶ 10, 23 *with* Mem. Op. ¶ 33.

to defeat the properly supported summary judgment challenge to his age discrimination claim by contrasting changes in his sales figures to changes in the sales figures of other sales representatives.[20] *See, e.g., Kuhn,* 78 F.3d at 332 (affirming the entry of summary judgment against plaintiff who rebutted defendant's legitimate, non-discriminatory reason only with evidence of a single case comparable to his situation); *cf. Nicholson,* 555 F.Supp. at 6; *Hayden v. La–Z–Boy Chair Co.,* 838 F.Supp. 384, 390–91 (N.D.Ind. 1992). *See generally Wilkins,* 654 F.2d at 410.

23. Eighth, Lupo maintains that, contrary to what the court held, Randy Johnson and Ronald Westmoreland are competent to attest to how Wyeth reorganized after the RIF because their personal knowledge of that matter can be inferred from their respective affidavits.[21] Mot. at 13–14. Although a court may infer personal knowledge from an affidavit itself, it need not do so when other evidence indicates that the affiant has no personal connection to the subject matter or there is other evidence suggesting that he or she likely did not have or could not have personal knowledge of it. *See United States v. Davis,* 792 F.2d 1299, 1304 (5th Cir.1986), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986). Lupo fails to realize that this principle applied to the statements of Johnson and Westmoreland concerning Wyeth's reorganization because certain uncontroverted evidence indicated that both of these individuals not only lacked a personal connection to that development but also could not have possessed personal knowledge of it. *See* Mem.Op. ¶ 43 n. 34.

24. Finally, Lupo asserts that the court penalizes him for the failure of Wyeth and American to disclose the exact date on which Wyeth identified whom to release in the RIF. Mot. at 15. In doing so, he ignores that he brought the importance of that particular point in time to the court's attention. *Compare* Rejoinder at 9 (citing *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1095 (5th Cir.1981)) *with* Mem.Op. ¶ 41 (citing *Hedrick,* 658 F.2d at 1094).[22] He, therefore, presumably appreciated the potential significance of this piece of information before the summary judgment ruling was rendered. Despite this awareness, he elected against seeking a continuance under Federal Rule of Civil Procedure 56(f) to afford himself an opportunity to obtain it. Such a chain-of-events provides no basis for granting a Rule 59(e) motion. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (when the non-movant-plaintiff bears the burden of proof at trial, it must produce affirmative evidence to defeat a properly supported summary judgment motion, "even where the evidence is likely to be within the possession of the defendant, as long as [it] . . . . has had a full opportunity to conduct discovery"); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988) (a party may not escape a properly supported summary judgment motion by "claim[ing] that further discovery or a trial might reveal facts [of] which [it] . . . is currently unaware"); *Snavely,* 947 F.Supp. at 1011 (refusing to grant motion to reconsider based on the possibility of securing deposition testimony sufficient to foreclose the suit's dismissal because plaintiff offered no explanation for why he had failed to take the deposition before the dismissal occurred).

### *Conclusion*

25. Because it finds that neither newly discovered evidence nor a manifest error of

---

**20.** Rather than holding that Lupo can survive the summary judgment motion only by showing that the RIF as a whole was a pretext, the court just insists that his comparative quantitative evidence, on which he chooses to rely, be sufficient to raise an a reasonable inference of unlawful age discrimination. *See, e.g., Kuhn,* 78 F.3d at 332–33; *cf. Nicholson v. Western Elec. Co.,* 555 F.Supp. 3, 6 (M.D.N.C.1982), *aff'd,* 701 F.2d 167 (4th Cir.1983); *Hayden,* 838 F.Supp. at 390–91. *See generally Wilkins,* 654 F.2d at 410.

**21.** Lupo mistakenly believes that the court found Henry Botter's affidavit problematic because of a lack of personal knowledge. *Compare* Mot. at 13–14 *with* Mem.Op. ¶ 43.

**22.** The Rejoinder's citation of page 1095 apparently was a typographical error. *Compare* Rejoinder at 9 *with* Mot. at 15 (citing *Hedrick,* 658 F.2d at 1094).

law or fact requires the setting aside of its previous grant of summary judgment to Wyeth and American, the court denies Lupo's Motion for New Trial [52].

26. The court will enter an order consistent with this memorandum opinion.