**Cleve C. VENABLE, Jr., Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

**No. 4:96CV00893.**

United States District Court, M.D. North Carolina, Salisbury Division.

July 29, 1998.

Terry Fay Rose, Charlotte, NC, for Plaintiff.

Gill P. Beck, Office of U.S. Atty., Greensboro, NC, Mary A. Sloan, Soc. Sec. Admn., Chief Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is presently before this Court on Defendant Kenneth S. Apfel's Motion to Dismiss and Motion for Summary Judgment [Document # 18], which were filed on behalf of the Social Security Administration ("SSA"). For the reasons stated herein, Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1988 claims and Defendant's Motion for Summary Judgment as to Plaintiff's Age Discrimination in Employment Act ("ADEA") and Title VII claims are hereby GRANTED and this action is DISMISSED. Defendant's Motion to Strike [Document # 16] Plaintiff's Jury Demand as to his ADEA claim is hereby rendered MOOT.

## I. FACTS and PROCEDURAL HISTORY

This is an age and sex discrimination cause of action arising out of Plaintiff's contention that SSA management made the decision not to promote Plaintiff, a male over the age of forty, but instead to promote Renee Caldwell ("Caldwell") because Caldwell was significantly younger than Plaintiff and because she was a female. The facts leading up to Caldwell's promotion over Plaintiff are as follows. Plaintiff first began working for the SSA in 1975 as a Claims Representative in its Huntsville, Alabama office. In 1981, Plaintiff was promoted to the position of Operations Supervisor ("OS"). (Pl.'s Reply Br. at 2.) As an OS, Plaintiff was in charge of supervising Title XVI claims but was not in charge of supervising Title II claims.[1] (See Pl.'s Ex. 10.) While employed at the Huntsville office, Plaintiff received excellent evaluations for his job performance as well as honorary awards in recognition of his achievements. (Pl.'s Ex. 1.) In 1987, Plaintiff voluntarily accepted a position as a Title XVI Claims Representative in the Salisbury, North Carolina SSA office in order to be geographically closer to his family. (Pl.'s Ex. 2.) The position of Claims Representative was at a lower grade than the OS position. (Id.; Pl.'s Reply Br. at 2.) It was Plaintiff's understanding that he would be able to reapply for the OS position in the Salisbury office when the position became available. (Pl.'s Reply Br. at 2.)

In 1990, Caldwell began working as a Title II Claims Representative in the Salisbury SSA office. (See Pl.'s Ex. 9 at 14.) Initially, District Manager Lillian Hatley ("District Manager Hatley" or "Manager Hatley") trained Caldwell as a Title II Representative. (Def.'s Ex. A at 1; Def.'s Ex. B ¶ 8; Pl.'s Ex. 3 at 101; Pl.'s Ex. 5 at 85–90.) During 1991 and 1992, Caldwell also was given the opportunity to cross-train for the Title XVI position as well. (Pl.'s Ex. 5 at 80.) At the time that Caldwell was given the opportunity to cross-train, Plaintiff was not working in the Salisbury office because he had accepted a one-year work assignment in the Baltimore, Maryland SSA office to assist with the development of a new program for Social Security. (Pl.'s Reply Br. at 3, 6; Pl.'s Ex. 1.)

In the fall of 1993, it became known that Racine Douglas, the then current OS, would be leaving the Salisbury office. At first, it was not believed that the OS position would be filled as a result of a need to downsize. (Pl.'s Ex. 3 at 102.) However, in February of 1994, it was announced that the Salisbury

---

1. Congress has created two major federal income maintenance programs administered by the SSA. Title II of the Social Security Act establishes the Social Security Disability Insurance Program. This Title II program provides disability protection to blind and disabled workers, widows and widowers, and adult children over the age of 18. The recipients of Title II benefits must have contributed to the disability trust fund and must suffer an infirmity as a result of a physical or mental impairment. Furthermore, Title XVI of the Social Security Act establishes the Supplemental Security Income Program and provides disability benefits to all indigent individuals who are either blind or disabled. See "Social Security," 51 Soc. Security Rep. Serv. (West) 991 (1996) (citing 42 U.S.C. §§ 410–433, 1381–1384 (1988 & Supp. IV 1992)).

office could fill the OS position. (Def.'s Br. at 2; Ex. C at 138.) Both Plaintiff and Caldwell submitted applications to the promotion committee in Atlanta, Georgia to be considered for the OS position.

At that time, the application process for an open position consisted of two-parts: (1) an objective determination of the Best Qualified List ("BQL"), and (2) a subjective selection of the best qualified applicant from the BQL. (Def.'s Ex. B ¶¶ 5, 7; Ex. C at 142–44, 204.) Each employee interested in being considered for the OS position submitted an application packet to the promotion committee in Atlanta, Georgia. (Def.'s Ex. C at 216, 137.) The initial BQL determination was made by this Atlanta, Georgia committee based upon an applicant's point total from a predetermined point system. (*Id.* at 137.) This point total was calculated from the candidate's application which included the applicant's appraisal, education, experience, awards, and outside activities, among other things. (*Id.*) Although certain activities and experience equaled certain points, the number of points that were assigned depended on how specifically a candidate described the activity or experience. (Pl.'s Ex. 3 at 108.) Once the BQL was determined, the BQL was listed alphabetically without any recognition of the applicant's BQL point total. (Def.'s Ex. C at 144 .) Then the selecting managers made a recommendation from this list. (Def.'s Ex. B ¶¶ 6–7; Ex. C at 144.)

On or about March 1, 1994, District Manager Hatley received a telephone call from her supervisor, Area Director Mary Cain ("Area Director Cain" or "Director Cain"), and was informed that Plaintiff and Caldwell were two of the eleven candidates who made the BQL. (Def.'s Ex. B ¶ 5; Ex. C at 175.) The nine other selectees were not from the Salisbury office. (Def.'s Ex. A; Ex. B ¶ 7; Ex. C at 176–77.) District Manager Hatley had not been involved in the process of determining who made the BQL and did not receive any information regarding the number of points each candidate received. (Def.'s Ex. B ¶ 5; Ex. 8, attached to Def.'s Ex. C.) Pursuant to the second step of the application process, in order to determine

who would be best suited for the OS position, Hatley spoke with the supervisors of the other prospective candidates. (Def.'s Ex. A at 1.) After consideration of all the applicants, District Manager Hatley, with the help of Assistant Manager Ronald Buffaloe ("Assistant Manager Buffaloe" or "Manager Buffaloe"), determined that Caldwell was the best qualified for the OS position. (Def.'s Ex. A; Ex. B ¶ 8; Ex. C at 151–53, 157, 182–83, 192.) District Manager Hatley called Area Director Cain to explain her selection. (Def.'s Ex. C at 180–81.) Director Cain approved District Manager Hatley's recommendation based on Cain's knowledge of Caldwell's background, capabilities, and demonstrated performance. (Def.'s Ex. E.) Caldwell was selected for the OS position on March 31, 1994. (*Id.*; Def.'s Br. at 10.)

Based on these facts, Plaintiff has alleged claims of age and sex discrimination, both in violation of 42 U.S.C. §§ 1983, 1985, and 1988. Plaintiff has also alleged an age discrimination claim in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and a sex discrimination claim in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Defendant moves to dismiss Plaintiff's §§ 1983, 1985, and 1988 claims for failure to state a claim upon which relief can be granted. Additionally, Defendant moves for summary judgment as to Plaintiff's ADEA and Title VII claims because Defendant has set forth legitimate, nondiscriminatory reasons for not selecting Plaintiff for the OS position and because Plaintiff has failed to demonstrate that these reasons are a pretext for discrimination based on age and sex. The Court will discuss each of Defendant's arguments in turn.

## II. PLAINTIFF'S 42 U.S.C. §§ 1983, 1985, & 1988 CLAIMS

In Count I of Plaintiff's Complaint, Plaintiff appears to have alleged causes of action for violations of §§ 1983, 1985, and 1988 of Title 42 of the United States Code. Defendant has moved to dismiss these claims.[2] Initially, the Court notes that Plain-

---

**2.** Defendant has moved to dismiss these claims [Document # 18] pursuant to Rule 12(b)(6) of the

tiff has not responded to Defendant's motion to dismiss these claims. As a result, pursuant to Local Rule 7.3(k), Defendant's motion to dismiss Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1988 will be treated as uncontested. *See* L.R. 7.3(k) (stating that if a respondent fails to file a response, the motion will be considered uncontested). Finding that the exclusive remedy for age and sex discrimination in employment for federal employees is the ADEA and Title VII respectively, *see Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1368–69 (4th Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989), the Court will grant Defendant's Motion to Dismiss as to Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1988.

## III. PLAINTIFF'S AGE AND GENDER DISCRIMINATION CLAIMS

As the Court has noted previously, Plaintiff has also alleged claims for discrimination based on his age, in violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*, and based on his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The age-based protections of the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631. Title VII establishes that "[a]ll personnel actions affecting employees . . . in executive agencies .. shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a). Defendant has moved for summary judgment as to Plaintiff's ADEA and Title VII claims.

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no issue as to any material fact and

. . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the Court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). Judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that would warrant the jury in finding a verdict in favor of that party.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202, 213 (1986) (quoting *Schuylkill & Dauphin Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1900)). However, a motion for summary judgment should not be granted " 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.' " *Campbell v. Hewitt Coleman & Assoc.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967)).

### B. Discussion

In order to prevail on Plaintiff's ADEA and Title VII claims, Plaintiff must prove that he was a victim of unlawful discrimination and that "but for" such discrimination, he would have been promoted to the OS position. *See Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982). Plaintiff may prove his case by either direct or indirect evidence of a stated purpose to discriminate or by using the proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir.1992)

---

Federal Rules of Civil Procedure. However, because Rule 12(b)(6) requires that this motion be made prior to, or at the same time as, the filing of the responsive pleading, the Court will treat Plaintiff's Motion to Dismiss as a Motion for Judgment on the Pleadings under Rule 12(c) of

the Federal Rules of Civil Procedure. *See* Fed. R.Civ.P. 12(h)(2) ("a defense of failure to state a claim upon which relief can be granted [Rule 12(b)(6) ] . . . may be made . . . by motion for judgment on the pleadings [Rule 12(c) ].")

(stating that a plaintiff can establish a claim under the ADEA either with direct or indirect evidence of a stated purpose to discriminate or by resorting to the *McDonnell Douglas* scheme); *Fuller v. Phipps*, 67 F.3d 1137, 1141 (4th Cir.1995) (using the *McDonnell Douglas* burden-shifting framework for claims under Title VII when there is no direct evidence of discrimination). For both of these claims, because Plaintiff has not offered any direct evidence of a stated purpose to discriminate, Plaintiff must satisfy the three-step proof scheme established in *McDonnell Douglas*.

Under the *McDonnell Douglas* proof scheme, Plaintiff has the initial burden of proving his *prima facie* case of discrimination by a preponderance of the evidence. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407, 415 (1993). If Plaintiff succeeds in establishing his *prima facie* case, then a presumption of discrimination is created. *See id.* at 506, 113 S.Ct. at 2746, 125 L.Ed.2d at 416. Defendant then bears the burden of producing a legitimate, nondiscriminatory reason that would support a finding that discrimination was not the cause of the employment action, thereby rebutting the presumption of discrimination raised by the *prima facie* case. *See id.* at 506–07, 113 S.Ct. at 2746, 125 L.Ed.2d at 416. This is a burden of production, not of persuasion. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216–17 (1981).

If Defendant produces a legitimate, nondiscriminatory reason, Plaintiff bears the " 'ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination.' " *St. Mary's Honor Ctr.*, 509 U.S. at 508, 113 S.Ct. at 2747, 125 L.Ed.2d at 416 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207) (alterations in original). In order to meet this burden, Plaintiff must produce sufficient evidence from which a reasonable fact finder could conclude " 'both that the reason was false, and that [age and sex] discrimination was the real reason.' " *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 201 (4th Cir.1997) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. at 2751, 125 L.Ed.2d at 421–22). The Fourth Circuit has recently termed this approach as "pretext-plus." *Vaughan v. MetraHealth Cos.*, 145 F.3d 197, 201–02, 1998 WL 271836 (4th Cir.1998). In *Vaughan*, the Fourth Circuit stated:

> [T]o survive a motion for summary judgment under the McDonnell Douglas paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action.

*Id.* Thus, although the burden of production shifts, Plaintiff always retains the ultimate burden of persuading the trier of fact that the Defendants intentionally discriminated against him. *See St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 416. Based on the *McDonnell Douglas* framework as explained above, the Court will discuss whether the evidence before this Court supports Plaintiff's contention that he was discriminated against based on his age and his gender and that but for such discrimination, Plaintiff would have been promoted to the OS position.

### 1. The *Prima Facie* Case

To establish a *prima facie* case of either age or sex discrimination for failure to promote, Plaintiff must prove that (1) he was a member of a protected group, (2) he applied for the position in question, (3) he was qualified for the position, and (4) he was rejected for the position under circumstances that give rise to an inference of unlawful discrimination. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir.1996) (gender discrimination); *Papa v. Union Carbide Corp.*, 971 F.Supp. 220, 225 (S.D.W.Va.1997) (citing *Evans* in the context of a failure to promote claim under the ADEA). Defendant does not dispute that Plaintiff has established his *prima facie* case of age discrimination.[3] (*See* Def.'s Br.

---

**3.** To satisfy the fourth prong of the *prima facie* case of age discrimination and raise an inference

in Supp. of Mot. for Summ. J. at 12.) On the other hand, Defendant does dispute whether Plaintiff has established his *prima facie* case of sex discrimination because Defendant argues that a higher burden should be placed on Plaintiff as a result of his male gender.[4] (*See* Def.'s Rep. Br. at 6 n. 5.) However, the Court declines to determine whether a higher burden should be placed on Plaintiff simply because he is a white male. *Cf. Lucas v. Dole,* 835 F.2d 532, 534 (4th Cir.1987) (declining to decide whether a higher burden should be placed on majority plaintiffs). The Court finds that Plaintiff has established his *prima facie* case, and has raised an inference that he was discriminated against based on his sex, by showing that he was qualified for the position of OS, that he was not promoted, and that a woman, who is arguably less qualified for the position than Plaintiff, was promoted instead. *See Tenthoff v. McGraw–Hill, Inc.* 808 F.Supp. 403, 405–06 (E.D.Pa.) (finding that the plaintiff had established his *prima facie* case of sex and age discrimination by showing that he was a forty-six year old male, that he was replaced by a thirty-six year old woman, and that a reasonable jury could infer that he was qualified for the position), *aff'd,* 981 F.2d 1248 (3rd Cir.1992).

### 2. Nondiscriminatory Reasons and Pretext

██ Having determined that Plaintiff has met his initial burden of establishing his *prima facie* case of age and sex discrimination, the Court also finds that, based upon the evidence presented, Defendant has met its burden of articulating legitimate, nondiscriminatory reasons why it promoted Caldwell to the position of OS instead of Plaintiff. This finding is illustrated by the following facts.

For example, when attempting to determine what type of employee would be best to fill the OS position, SSA management believed that the candidate for the position needed initiative, overall concern for the service that the office was providing, and leadership capabilities. (Def.'s Ex. A at 1; Ex. C at 145–46, 151–52, 178.) SSA management was not necessarily looking for the best technician, even though that was a consideration, but was instead looking for someone who was motivated and could learn from experience. (Def.'s Ex. C at 145, 178.) Finally, SSA management was looking for someone who would set a good example as a leader. (Def.'s Ex. B ¶ 11; Ex. C at 179.) Based upon these criteria, SSA management determined that Caldwell best fit these characteristics because Caldwell often voluntarily helped others in the office beyond her specific job responsibilities, she was cooperative, she kept on top of her work, and she easily adapted to whatever the work schedule was for the day. (Def.'s Ex. A at 1; Ex. C at 152–53, 182–84; Ex. E at 1.)

On the other hand, SSA management felt that Plaintiff did not satisfy these criteria. For example, Manager Buffaloe stated in his affidavit that although Plaintiff would assist his co-workers when asked, Plaintiff did not volunteer to help co-workers with their work or in emergency situations. (Def.'s Ex. D ¶ 2.) Manager Hatley also stated that Plaintiff did not willingly accept work from his co-workers. (Def.'s Ex. B ¶ 9.) Furthermore, Manager Buffaloe and Assistant Director Cain did not feel that Plaintiff had demonstrated the same types of initiative that Caldwell had demonstrated. (Def.'s Ex. C at 157;

---

of unlawful discrimination, Plaintiff merely needs to show that a substantially younger person with comparable qualifications was promoted. *See Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir.1996) (ADEA); *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (modifying the fourth prong of the ADEA *prima facie* case).

**4.** Defendant relies on *Bishopp v. District of Columbia,* 788 F.2d 781 (D.C.Cir.1986), where the D.C. Circuit was faced with a discrimination case in which the plaintiff, a white male, claimed that he was discriminated against on the basis of race. *Id.* at 786. In order to establish the fourth

prong of the *prima facie* case and raise an inference of unlawful discrimination, the D.C. Circuit held that "[w]hite males, who as a group historically have not been hindered in the workplace because of their race or sex, are required to offer other particularized evidence, apart from their race and sex, that suggests some reason why an employer might discriminate against them." *Id.* However, the Fourth Circuit in *Lucas v. Dole,* 835 F.2d 532 (4th Cir.1987), while recognizing the higher burden placed on white males by the D.C. Circuit in *Bishopp,* expressly declined to decide whether a higher burden applies to majority plaintiffs. *Lucas,* 835 F.2d at 534.

Ex. E at 1.) Manager Hatley also felt that Caldwell had demonstrated more interest in the needs of the office than Venable had demonstrated. (Def.'s Ex. A at 2; Ex. C at 189.) Manager Hatley stated in testimony at the Administrative Hearing, held prior to bringing this cause of action before this Court, that she had never seen Venable express an interest in anybody else's work outside of his assignments and that he sometimes complained when he was asked to do something. (Def.'s Ex. C at 189.) Finally, Managers Hatley and Buffaloe felt that Plaintiff exhibited volatile behavior not befitting that of a supervisor such as becoming agitated easily, using profanity, and slamming drawers. (Def.'s Ex. B ¶ 9; Ex. D ¶ 2.) SSA management was also aware of other employees of the Salisbury SSA office who had observed Venable using profanity and acting out his anger. (Def.'s Ex. G ¶ 4; Ex. I ¶ 4.) The Court finds that this proffered evidence establishes legitimate, nondiscriminatory reasons for Defendant's decision not to promote Plaintiff. Therefore, the burden shifts back to Plaintiff to prove both that the reasons offered by Defendant are false and that discrimination based on age and sex is the real reason why Plaintiff was not promoted. *See Halperin,* 128 F.3d at 201.

 Plaintiff has offered the following evidence from which he contends demonstrates that the reasons given by SSA management for why he was not promoted to the OS position are false.[5] First, Plaintiff argues that the SSA management's statements that Plaintiff did not demonstrate overall concern for the Salisbury office and that he lacked initiative are false. Instead, Plaintiff contends that the evidence demonstrates that he did in fact show an overall concern for the office. In support of this contention, Plaintiff offers the following facts: (1) he helped move the office when relocation occurred, (2) his co-workers state that they find him to be helpful in assisting them and that he is knowledgeable, (3) he is constantly aware of safety issues and potentially dangerous situations for his co-workers, (4) he accepted a

year-long assignment away from his home to assist the agency, and (5) he provided numerous training sessions for employees and the public. (*See* Pl.'s Reply Br. at 5, 9.) Second, Plaintiff contends that SSA management's statements that Plaintiff exhibited volatile behavior, such as kicking a trash can in frustration, which in turn made him unsuitable as a manager, are not true because Plaintiff explains that the one instance where he did kick a trash can was in frustration and pain, after accidentally running into the trash can and injuring himself, and not because he had a bad temper. (*Id.* at 5–6, 10.) Furthermore, Plaintiff contends that he had never been told verbally or in writing that he had exhibited volatile behavior. (*Id.* at 10.) Third, and finally, Plaintiff contends that SSA management's statement that Caldwell was more willing to help co-workers than Plaintiff is false. Instead, Plaintiff contends that because Caldwell was still in an apprenticeship position, she may not have had as heavy of a caseload as Plaintiff, thus implying that she had more time to assist others in the office than Venable. (*Id.* at 6.) Plaintiff further contends that the fact that Caldwell was the only employee who volunteered to be cross-trained in both the Title II and Title XVI areas of the SSA office is not evidence that Caldwell was more motivated than Plaintiff because, at the time that the Salisbury office asked for volunteers, Plaintiff was on a year-long assignment at the Baltimore SSA office and was not able to volunteer at the Salisbury office. (*Id.* at 6, 10.) As a result, Plaintiff contends that he has proffered evidence from which a reasonable fact finder could conclude that the reasons given by SSA management to explain their decision that Plaintiff was not the better candidate for the OS position are false. However, even if Plaintiff could meet the burden of establishing that Defendant's legitimate reason for not selecting him for the OS position are false, Plaintiff "cannot 'prevail[ ] on the ultimate issue merely by demonstrating that the defendant's proffered explanation for the ad-

---

5. The Court notes that, to the extent that Plaintiff argues that Defendant's reasons for not promoting him are false, Plaintiff has failed to direct this Court specifically to any document from which the Court can determine whether Plaintiff's evidence does in fact demonstrate that Defendant's proffered reasons are false.

verse action is not true.' " *Halperin*, 128 F.3d at 201 (quoting *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir.1995)). Rather, to survive summary judgment, Plaintiff must also have evidence from which a reasonable fact finder could conclude that SSA management's decision not to promote Plaintiff was motivated by intentional discrimination. *See id.* at 202.

Plaintiff's evidence supporting his contention that discrimination was the real reason for not being promoted is as follows. First, Plaintiff contends that summary judgment should be denied because he is more qualified than Caldwell as is demonstrated by their BQL scores. (*See* Pl.'s Br. at 12.) Plaintiff argues not only that Caldwell did not initially have enough points to make the BQL but also that Caldwell was only on the BQL because District Manager Hatley helped Caldwell update her record. (Pl.'s Reply Br. at 4, 12.) The evidence demonstrates that Caldwell had a score of sixty in September 1993. (Pl.'s Ex. 4 at 209.) To the extent that Plaintiff is arguing that Caldwell's score was changed after the vacancy was announced, but before the BQL was determined, the evidence demonstrates that until the BQL is determined, employees are encouraged to update their applications. (Def.'s Ex. B ¶ 4; Ex. C at 143–44, 210.) To the extent that Plaintiff finds it important that District Manager Hatley helped only Caldwell in updating the information to her record once the vacancy was announced, and did not offer to help Plaintiff, the Court makes two observations. First, Plaintiff does not dispute that prior to the OS vacancy announcement, Manager Hatley helped both Plaintiff and Caldwell complete their applications and updates. (Def.'s Ex. B ¶ 4.) Second, after the vacancy was announced, the fact that Manager Hatley assisted Caldwell in updating her record, but may not have offered to help Plaintiff, is not dispositive of whether Manager Hatley did so with the intent to discriminate against Plaintiff on the basis of age or sex. This is so because Manager Hatley had been Caldwell's mentor and had been assisting Caldwell for several years in her training as a Claims Representative. (Pl.'s Ex. 5 at 88); *see Parrott v. Cheney*, 748 F.Supp. 312, 316 (D.Md.1989)

(citing *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir.1989)) (stating that a special relationship or favoritism towards one individual does not constitute discrimination actionable under Title VII), *aff'd*, 914 F.2d 248 (4th Cir.1990). Finally, to the extent that Plaintiff may be arguing that Caldwell's score changed after the BQL was determined, (*see* Pl.'s Reply Br. at 12), Plaintiff has not offered any evidence from which this Court can determine that Caldwell's score was changed after the BQL was determined. As a result, the Court finds that Plaintiff's evidence is insufficient to support Plaintiff's contention that Caldwell was placed on the BQL only after the BQL was determined. Plaintiff's evidence further fails to establish that Manager Hatley helped Caldwell get on the BQL prior to the determination of the BQL with the intent to discriminate against Plaintiff because he was a male over the age of forty.

In addition to Plaintiff's argument that he had a higher rating than Caldwell to be qualified for the BQL, Plaintiff also contends that summary judgment should be denied because Plaintiff was overall more qualified than Caldwell. (Pl.'s Rep.Br. at 14.) To support his contention, Plaintiff asserts that he has "numerous awards for his work, accommodations, testimony by co-workers of his expertise, exemplary evaluations, a past record of having performed in the same position for the same agency in previous years without complaint by the agency, ... and shown more seniority with the agency than that of the person promoted." (*Id.*) Plaintiff, however, does not dispute that once the BQL is announced, the scores are dropped, the employees are listed alphabetically, and all the employees on the BQL are regarded without any recognition of their scores. (*See* Def.'s Ex. C at 142–44.) Thereafter, the selecting managers make a recommendation of who should fill the vacant position based on the managers' knowledge of the employee and without any knowledge of any of the employees' overall BQL ratings. (*Id.*) Although Plaintiff has offered evidence from co-workers who state that he was qualified for the position or even that they believed that he was more qualified than Caldwell,

(see Pl.'s Ex. 3 at 98; Ex. 5 at 77–79), whether or not Plaintiff himself or his co-workers believe he is more qualified for the position is not relevant to this Court's determination. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). Rather, "[i]t is the perception of the decision maker" and not the employee which is relevant. *Id.; see also Riley v. Technical & Management Servs. Corp., Inc.,* 872 F.Supp. 1454, 1461 (D.Md.1995) (stating that an employee's view of her qualifications is irrelevant unless she can show that the employer's position on her qualifications was a pretext for discrimination), *aff'd,* 79 F.3d 1141 (4th Cir.1996). Furthermore, even if Venable was in fact more qualified, this fact alone does not establish that Defendant's stated reasons for promoting Caldwell were pretext. *See Williams v. Encompass,* 969 F.Supp. 15, 17 (E.D.N.C.1997). As Judge Gordon has explained:

> A company may have good or bad reasons for making personnel decisions. Its decisions may reflect poor business judgment or an animosity towards a particular employee. But, unless the decision is motivated by an age ... or sexual bias, it cannot support a Title VII or ADEA claim.

*Nicholson v. Western Elec. Co.,* 555 F.Supp. 3, 8 (M.D.N.C.1982), *aff'd,* 701 F.2d 167 (4th Cir.1983). Thus, Plaintiff's evidence that he was more qualified than Caldwell for the OS position is not sufficient in and of itself to demonstrate that SSA management discriminated against him based on his age and sex.

■ Moreover, Plaintiff's deposition testimony also does not provide this Court with evidence of intentional discrimination. For example, Plaintiff states in his deposition that he believes that Manager Hatley discriminated against him based on age, because Manager Hatley "selected a younger employee with less experience for this position," (Def.'s Ex. J at 11), and based on sex, because of "[t]he mere selection in this case, in that it was not based on a merit-type selection." (*Id.* at 10–11.) Plaintiff also stated that he believes that Area Director Cain discriminated against him based on age, because "[s]he selected a younger, much younger individual with less experience and fewer qualifications," (*id.* at 13), and based on sex,

because of the "high selection of people of a female gender." (*Id.* at 12) As to all of this evidence, the Fourth Circuit has clearly held that in determining whether an employer engaged in intentional discrimination, " 'the mere fact of replacement by a younger employee is not dispositive of age discrimination.' " *Halperin,* 128 F.3d at 202 (quoting *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 512 (4th Cir.1994)). The Court finds that this rationale equally applies to gender discrimination—that is, the mere fact of replacement by a woman is not dispositive of gender discrimination. Therefore, this evidence, too, is insufficient to carry Plaintiff's burden of showing that the real reason why he was not promoted was because of intentional discrimination based on either his age or gender.

■ Finally, Plaintiff has also offered the following evidence to support his claims of discrimination on the bases of age and sex. The Court will discuss, in turn, the specific evidence being offered by Plaintiff to support these individual claims. First of all, to establish his claim of age discrimination, Plaintiff attaches great significance to certain statements made by Manager Buffaloe. (*See* Pl.'s Reply Br. at 4.) At the Administrative Hearing held prior to bringing the present cause of action, in response to why Manager Buffaloe felt that Caldwell should be recommended for the OS position, Buffaloe specifically stated:

> Because, as I said, there were certain things that I thought our office needed at that time. When I came to Salisbury I, in effect, inherited one operation supervisor. He was already on the job, and it was made clear to me by the present district manager that he intended to let him retire from that position. There was discussion that, that we possibly needed to take action to replace him, but he made clear that he wanted him to have that opportunity to retire from the job, so we did that.

> The second, Ms. Douglas, the second supervisor since I was there, that selection was made by Mr. Thomas because she was functioning as an operations analyst at the time.

So this was the first opportunity we had to meet some needs that I felt we needed in the office....

I felt that we needed something that we had not had for a while, and that was somebody who was interested in public service, someone who showed an interest in things other than just their one little desk and their one work assignment; that we needed somebody who had situational awareness, maybe is a word I would use. They are aware of what's going on around them in the office. If somebody is out for a day or a week, they will volunteer to work their desk. These kinds of things that we didn't have with the previous two supervisors that I felt we needed....

(Pl.'s Ex. 8 at 150–51.) Although Plaintiff does not specifically explain to this Court why these statements are probative on the issue of discrimination, Plaintiff interprets these statements to mean that Manager Buffaloe "admitted [that the SSA] had had two previous people in the OS position who were near retirement age and that they had had to retain [them] until retirement and [that] *this was not something they wished to deal with again.*" (Pl.'s Reply Br. at 4) (emphasis added). However, after a thorough review of Manager Buffaloe's statements, the Court cannot find that Manager Buffaloe indicated by these statements that SSA management did not want to fill the OS position with someone close to retirement. Rather, these statements represent only Manager Buffaloe's description of management's first opportunity in a number of years to fill the position with someone who had certain supervisory characteristics that had not been met by the prior supervisors. As a result, the Court finds that the evidence of Manager Buffaloe's statements is not evidence from which a reasonable fact finder could conclude that SSA management discriminated against Plaintiff based on his age.

▮▮▮ Second, with respect to the issue of sex discrimination, Plaintiff also attaches great significance to Plaintiff's Exhibit 12 which Plaintiff contends "shows an implication within the agency to hire and promote women." (Pl.'s Reply Br. at 6.) This exhibit contains several documents which offer some statistical evidence as to the number of males and females that have been promoted to the OS or other managerial positions in previous years. Initially, the Court notes that "[s]tatistics can provide important proof of employment discrimination." *Carter v. Ball,* 33 F.3d 450, 456 (4th Cir.1994). However, as the Fourth Circuit has further explained:

> The usefulness of statistics depends on the surrounding facts and circumstances. In a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool.
>
> The mere absence of minority employees in upper-level positions does not suffice to prove a *prima facie* case of discrimination without a comparison to the relevant labor pool. Moreover, if plaintiff offers a statistical comparison without expert testimony as to methodology or relevance to plaintiff's claim, a judge may be justified in excluding the evidence.

*Id.* at 456–57 (citations omitted).

The statistical evidence proffered by Plaintiff in his Exhibit 12 provides the Court with the following information. First, while not specific to Plaintiff's present action before this Court, Plaintiff offers as general information a document that appears to be the last page of a letter written by Beatrice Cooper ("Cooper"), Civil Rights and Equal Opportunity Manager. In this letter, Cooper states in a section entitled "*Women on the Move*":

> As of September 30, 1983, 1015 employment opportunities occurred in the region. Women were involved in 77% of these opportunities which is a higher percentage than the National Civilian Labor Force (42.2%). They filled 60% of GS–12 Branch Manager vacancies and 40% of GS–14 District Manager vacancies.

(Pl.'s Ex. 12.) In addition, Plaintiff provides a second document, entitled "Report of Telephone Contacts" and allegedly written by Bonita White ("White"), Director of the Complaints Division of the Department of Health and Human Services, in which White discusses the number of males to females that had

been promoted to the OS position since August of 1989. Specifically, White states that

> [a]fter I received the information on selectees in the West North Carolina area from Area Director, Mary Cain, I contacted Mr. Venable to discuss this data.
>
> From the information on Attachment *B*, it appeared that 15 males and 16 females had been appointed/promoted since 08/13/89. This is clearly not a discriminatory proportion of either males or females. The ratio in the past two years is somewhat different. In that time period, 6 males and 16 females have been appointed/selected.

(Pl.'s Ex. 12.) [6] As to this document, however, the Court notes that a discrepancy exists. For example, even though Plaintiff's Exhibit 12 states six (6) males and sixteen (16) females were selected "in the past two years," thus totaling twenty-two (22) employees, this document also states, in discussing the ages of the employees, that "[i]n the immediate past two years, 12 persons age 40 and over were selected and 4 persons under 40 were selected," thus totaling sixteen (16) employees. Thus, at the very least, there is some uncertainty in Plaintiff's own exhibit as to the number of males to females that were selected for the OS position. However, the Court will accept that sixteen females and six males were selected for the purpose of reviewing the probative value of Plaintiff's Exhibit 12.

▮ The Court finds that the statistical evidence that the Court has just explained above is analogous to the evidence proffered in *Henson v. Liggett Group, Inc.,* 61 F.3d 270 (4th Cir.1995). In that case, an age discrimination case, evidence was offered that between January 1, 1991 and July 26, 1993, fifty-nine percent (59%) of the employees terminated by the defendant employer were over the age of forty. *See id.* at 276. Additionally, from May 1992 and July 1993, the defendant employer hired thirty-five (35) employees, twenty-five (25) of whom were under the age of forty. *See id.* However, the Fourth Circuit ultimately found that "[i]n the absence of demographic information about the pool of employees at Liggett and the pool from which employees were hired or the positions into which they were hired, the figures offered by Henson are not proof of discrimination." *Id.* (citing *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 912 (4th Cir.1989)). Thus, in order for statistical evidence to be probative on the issue of discrimination, evidence of the qualified labor pool must be proffered. *See Carter,* 33 F.3d at 456–7; *see also Carlson v. Ferguson,* 993 F.Supp. 969, 970 (S.D.W.Va.1998) (finding that because the plaintiff did not provide any data about the applicant pool as a whole, statistics about those hired were meaningless); *Johnson v. Runyon* 928 F.Supp. 575, 583–84 n. 5 (D.Md.1996) (noting that the plaintiff's statistical evidence was not probative of gender discrimination without a comparison between the percentage of female employees and the percentage of potential female applicants in the qualified labor pool), *aff'd,* 96–1920, 1998 WL 372473 (4th Cir. Jun.8, 1998).

In the present case, Plaintiff has not offered any evidence of the pool of employees from which the SSA had to choose in selecting candidates for the OS position in Salisbury. For example, although Plaintiff has offered evidence that of the eleven (11) certified applicants that made the BQL the year

---

**6.** Although Plaintiff has not provided this Court with "Attachment B," Defendant has offered a May 26, 1994 letter from Director Cain to a Ms. Dean in which Director Cain indicates that a list of the OS selections from 1989 until March of 1994 was attached. (Def.'s Ex. F.) At the top of the May 26, 1994 letter is handwritten "Att. B." Defendant has further offered a list entitled "OS/ACS selections, 1989–1994." (*Id.*) At the top of this list is handwritten "Att. B pg. 2." Furthermore, just as was stated in Plaintiff's Exhibit 12 entitled "Report of Telephone Contacts," out of the thirty-one (31) people set forth on the list that had been promoted since 08/13/89, fifteen (15) are males and sixteen (16) are females.

Thus, the Court believes that Plaintiff's Exhibit 12, which refers to "Attachment B," and Defendant's Exhibit F are the same document. However, the Court notes that a discrepancy exists between these two documents as well. For example, Plaintiff's Exhibit 12 and Defendant's Exhibit F conflict on the number of men and women that have been promoted between 1992 and March of 1994. Specifically, as stated previously, although Plaintiff's Exhibit 12 states that in the past two years, six (6) males and sixteen (16) females have been selected, Defendant's Exhibit F shows seven (7) males and ten (10) females were selected for promotion between 1992 and March of 1994.

that Caldwell was promoted to the OS position, eight (8) were females and only three (3) were males, (Def.'s Br. at 3; Ex. 8, attached to Ex. C), Plaintiff has not offered any evidence of the gender of the pool of employees that originally applied for the OS position prior to the determination of the BQL. Furthermore, Plaintiff has failed to make any arguments as to why the gender composition of the candidates on the BQL list demonstrates that Plaintiff was discriminated against on the basis of gender when he was not chosen from this pool of eight women and three men. Thus, even accepting Plaintiff's limited statistical evidence as true, without any additional evidence of the relevant labor pool from which the SSA had to choose its employees, the Court finds that Plaintiff's statistical evidence is not sufficient evidence from which a reasonable fact finder could conclude that Defendant intentionally discriminated against Plaintiff based on his sex.

Instead, evidence of the favorable actions District Manager Hatley took towards Plaintiff make it more likely that Hatley did not discriminate against Plaintiff. For example in 1990 and 1991, Hatley approved performance awards for Plaintiff thereby recognizing Plaintiff's achievements at the SSA. (*See* Def.'s Ex. J at 19–22.) Furthermore, Plaintiff even acknowledged that prior to the denial of the promotion, Plaintiff had no problems with District Manager Hatley "other than normal work type thing." (*Id.* at 22.) As a result, the Court finds that even viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff has produced facts that would ultimately show that the decision to promote Caldwell instead of Plaintiff was made with an intent to discriminate against Plaintiff because of his age or sex. Thus, the Court finds that Plaintiff has failed to establish his ultimate burden of producing evidence from which a reasonable fact finder could conclude that but for Defendant's intent to discriminate against Plaintiff based on his age or gender, Defendant would have promoted Plaintiff to the OS position. The Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's ADEA and Title VII claims.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1988 claims and Defendant's Motion for Summary Judgment [Document # 18] as to Plaintiff's ADEA and Title VII claims are hereby GRANTED and this action is DISMISSED. Having dismissed this action, Defendant's Motion to Strike [Document # 16] Plaintiff's Jury Demand as to his ADEA claim is hereby rendered MOOT.