**TEXAS INSTRUMENTS, INC., Plaintiff,**

v.

**HYUNDAI ELECTRONICS INDUSTRIES, CO. LTD., Hyundai Electronics America, Inc., and Hyundai Semiconductor America, Inc., Defendants.**

No. 2:98CV74(TH).

United States District Court,
E.D. Texas,
Marshall Division.

March 15, 1999.

Kenneth Robert Adamo, Jones, Day, Reavis & Pogue, Dallas, TX, Jay Carl Johnson, Texas Instruments Incorporated, Dallas, TX, Carl R. Roth, Law Office of Carl R. Roth, Marshall, TX, Jack William Campbell, IV, Gregory A. Castanias, Jones, Day, Reavis & Pogue, Washington, DC, Barry Satine, Michael Covino, Jones

Day Reavis & Pogue, New York City, for Texas Instruments Inc., plaintiff.

Thomas John Ward, Brown McCarroll & Oaks Hartline, Longview, TX, David J. Beck, Beck, Redden & Secrest LLP, One Houston Center, Houston, TX, Danny Lloyd Williams, Williams, Morgan & Amerson PC, Houston, TX, Kenneth L. Nissly, Thelen Reid & Priest LLP, San Jose, CA, for Hyundai Electronics Industries Co., Ltd., Hyundai Electronics America Inc., Hyundai Semiconductor America, defendants.

Elizabeth Ellen Mack, Locke, Purnell, Rain, Harrell, Dallas, TX, Anthony de Alcuaz, Howard Rice Nemerowski Canady, Palo Alto, CA, for Nikon Precision Inc., movant.

Roderick M. Thompson, Pillsbury Madison & Sutro, San Francisco, CA, for DNS Electronics LLC, movant.

## ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING MOTION TO PRECLUDE RELIANCE UPON ALLEGED PRIOR ART

HEARTFIELD, District Judge.

Before this Court is Defendant *Hyundai's Motion for Reconsideration* [275]. Having considered the motion, the response, and the arguments of counsel, this Court DENIES Defendant *Hyundai's Motion for Reconsideration* [275]. In addition, this Court VACATES its *Memorandum and Opinion Order* [261] insofar as it denied *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense* [143]. This Court GRANTS in its entirety *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its*

*Invalidity Defense ("Motion to Preclude Prior Art")* [143].

### 1. Procedural History

On March 4, 1999 this Court held a hearing on pending evidentiary motions.[1] Specifically, this Court considered two motions previously argued at a February 4, 1999 hearing: 1) *Texas Instruments' Motion to Preclude Hyundai's Use of, or Reliance Upon Opinions of Counsel ("Motion to Exclude Opinions of Counsel")* [131]; and 2) *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense ("Motion to Preclude Prior Art")* [143]. On February 4, 1999, this Court issued its *Memorandum and Opinion Order* [197]; in that order, this Court held in abeyance Texas Instruments' *Motion to Exclude Opinions of Counsel* [131] and denied Texas Instruments' *Motion to Preclude Prior Art* [143], subject to its re-urging at the final pretrial conference and hearing. *See Memorandum and Opinion Order* [197] 4. Exactly one month later—on March 4, 1999—this Court held its final pretrial hearing. Accepting this Court's invitation for re-urging its *Motion to Preclude Prior Art* [143], Texas Instruments did, in fact, re-urge its *Motion to Preclude Prior Art* [143]. After considering the motion, the response, and the arguments of counsel presented at both the February 4, 1999 hearing and the March 4, 1999 final pretrial conference and hearing, this Court granted in part and denied in part *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense* [143].[2] Specifically, this Court held: "The evidence regarding Sundstrand, specifically as to the informa-

---

1. The March 4, 1999 hearing was, in fact, a final pre-trial conference with pending evidentiary motions piggy-backing along for hearing. All parties were on notice that this Court would hear pending evidentiary motions at this hearing; they were also on notice that this Court would re-visit prior evidentiary motions held in abeyance or marked for re-urging at prior hearings.

2. In that same *Memorandum and Opinion Order* [261] issued March 5, 1999, this Court granted *Texas Instruments' Motion to Preclude Hyundai's Use of, or Reliance Upon Opinions of Counsel* [131] held in abeyance pursuant to this Court's *Memorandum and Opinion Order* [197] issued February 4, 1999.

tion in the supplemental report [by Dr. Wedig] provided to TI on February 8, 1999, shall be EXCLUDED. The information provided to TI regarding Sundstrand prior to the February 8 report shall be ADMITTED at trial, subject to TI's Motion in Limine, paragraphs 7, 8, and 9." *Memorandum and Opinion Order* [261] 9. On the first day of trial in this case, March 8, 1999, this Court received *Hyundai's Motion for Reconsideration* [275] wherein Hyundai[3] seeks reconsideration of this particular ruling-particularly, this Court's exclusion of Dr. Wedig's Second Supplemental Expert Report provided to Texas Instruments on February 8, 1999.

### 2. Motion for Reconsideration Law

Hyundai wants this Court to "reconsider" its prior *Memorandum and Opinion Order* [261] excluding Dr. Wedig's supplemental report provided to Texas Instruments on February 8, 1999. *Hyundai's Motion for Reconsideration* [275] 1. "The Federal Rules do not recognize a 'motion for reconsideration' *in haec verba.*" *Lavespere v. Niagara Mach. & Tool Works,* 910 F.2d 167, 173 (5th Cir.1990) (reversed on other grounds). Latin aside, this Court recognizes that reconsideration is, in essence, what Hyundai seeks in this motion.

■■■ "Motions for reconsideration 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.' " *Lupo v. Wyeth–Ayerst Labs.,* 4 F.Supp.2d 642, 643 (E.D.Tex.1997) (citing *Waltman v. Intl. Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989) ); *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *Seidman v. American Mobile Systems,* 965 F.Supp. 612, 629 (E.D.Pa.1997). Moreover, motions for reconsideration "should not be used to raise arguments that could, and should, have been made before the entry of judgment

... [or] to re-urge matters that have already been advanced by a party." *Lupo,* 4 F.Supp.2d at 645 (citing *In re Liljenerg Enter.,* No. CV–A–97–0456, 1997 WL 222497, at *2, *3 (E.D.La. May 1, 1997) ); *Resolution Trust Corp. v. Holmes,* 846 F.Supp. 1310, 1316 (S.D.Tex.1994) (stating that a motion to reconsider is not "the proper vehicle for rehashing old arguments or advancing legal theories that could have been presented earlier"); *State v. Sprint Comm. Co.,* 899 F.Supp. 282, 284 (M.D.La.1995). "[L]itigants are expected to present their strongest case when the matter is first considered. A motion to reconsider based on recycled arguments only serves to waste the resources of the court." *State v. Sprint Comm. Co.,* 899 F.Supp. 282, 284 (M.D.La.1995). With this standard in mind, this Court now turns to Defendants' purported grounds for relief.

### 3. Discovery Sanction Law

As it noted in its March 5, 1999 *Memorandum and Opinion Order* [261] which addressed the parties' most recent barrage of evidentiary motions, this Court enjoys wide latitude in matters of evidence, as Provided by Federal Rule of Civil Procedure 37:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed.R.Civ.P. 37(c)(1).

The Court has broad discretion to make whatever rulings that are just in light of the facts of the particular case. As recited above, one of the options available is the power to preclude evidence when a party's discovery is evasive or misleading. The Court also has the power to sanction or

---

**3.** As it has throughout many of its prior orders in this particular case, this Court will use "Hyundai" to refer collectively to the three defendants: 1) Hyundai Electronics Industries Company, Limited, 2) Hyundai Electron-

ics America, Incorporated, and 3) Hyundai Semiconductor America, Incorporated. For the limited purposes of this opinion, there is no need to distinguish between these three Hyundai entities.

order payment of expenses and/or attorney fees. *Id.*

■ In determining whether violation of Rule 26 requiring disclosure of evidence is harmless, such that the evidence may be used at trial despite non-disclosure, the trial court's discretion is to be guided by the consideration of four factors: (1) the importance of the evidence or witness' testimony; (2) the prejudice to the opposing party of allowing the evidence in; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness or evidence. Fed. R.Civ.P. 26(a), (e)(1), 37(c)(1); *United States v. $9,041,598.68*, 163 F.3d 238 (5th Cir.1998). The court is not required to make express findings of fact or conclusions of law concerning the existence of substantial justification or harmless failure to disclose, either by the express language of Rule 37, the Advisory Committee Notes, or Fifth Circuit case law. *Id.; see also Bradley v. United States*, 866 F.2d 120, 125 (5th Cir.1989). Such rulings by the trial court will not be disturbed on appeal absent a showing of abuse of discretion. *See Harris v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir.1985).

■ Furthermore, the admission or exclusion of expert testimony is a matter left to the discretion of the trial court, and will not be disturbed on appeal unless it is manifestly erroneous. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir.1995); *see also First Nat. Bank of*

*Durant v. Trans Terra Corp. Intern.*, 142 F.3d 802 (5th Cir.1998).

### 4. Analysis

Hyundai urges several grounds for reconsideration of this Court's *Memorandum and Opinion Order* [261] excluding Dr. Wedig's Second Supplemental Expert Report. This Court will consider each ground in turn.[4]

First, Hyundai argues that one of this Court's findings is not supported by any evidence and, accordingly, should be vacated. That finding is this: "The Sundstrand System appears at the heart of Wedig's invalidity opinion, and it is clear that Wedig and Hyundai had knowledge of the alleged new prior art months before finally disclosing it to TI."[5] *Memorandum and Opinion Order* [261] 2. Hyundai says that Dr. Wedig did not learn of the Sundstrand System until January 4, 1999; and that this Court's finding to the contrary should be vacated. This Court VACATES the afore-mentioned language insofar that it suggests Dr. Wedig had knowledge of the Sundstrand System prior to January 4, 1999.[6] However, this Court stands firm by that language insofar that it notes Hyundai has known—for several months—about the Sundstrand System. The fact that Hyundai did not disclose its knowledge of the Sundstrand System to Dr. Wedig is simply irrelevant as to whether Hyundai should have disclosed it to Texas Instruments.[7] This leads into Hyundai's second ground for relief.

---

4. Hyundai excerpts three passages from this Court's prior *Memorandum and Opinion Order* [261] and lists them under a subsection entitled "Hyundai Did Not Violate Rule 26." Considering the history of discovery in this case, this is, indeed, a rather bold assertion by Hyundai.

5. The Sundstrand System was sold to Ingersoll–Rand in Roanoke, Virginia. For the limited purposes of this opinion, there is no need to distinguish between "Ingersoll–Rand," the "Sundstrand System," and "Sundstrand;" thus, this Court will use them interchangeably throughout this opinion.

6. This Court notes that Dr. Wedig's Second Supplemental Expert Report was filed late.

7. Hyundai notes its counsel, Mr. Ward, represented to the Court that Dr. Wedig did not even get these documents until after December 31, 1998: "If I am incorrect in that and what they suggest is true, I would expect this Court to revisit anything it does based on my representation." *Transcript of February 4, 1999 Hearing*. This Court has not yet—nor does it now—see any need to revisit Mr. Ward's representations to this Court. Both of Hyundai's local counsel—Mr. T. John Ward and Mr. Danny Williams—have been consistently candid and forthright with this Court.

Second, Hyundai takes issue with the following finding from this Court's *Memorandum and Opinion Order* delivered March 5, 1999: ". . . Hyundai had knowledge of the alleged prior art months before finally disclosing it to TI. Interestingly, once again, Hyundai waited until January 7, one business day before the close of fact discovery, to finally disclose these important facts. This also included twelve (12) new fact witnesses." *Memorandum and Opinion Order* [261] 7. Hyundai argues "[t]he identities of the twelve (12) fact witnesses was [sic] disclosed on December 31, 1998, not January 7, 1999. Therefore, to the extent this finding suggests otherwise, it is not supported by any evidence and should be vacated." *Hyundai's Motion for Reconsideration* [275] 3. This Court VACATES this particular language insofar as it suggests the *identities* of the twelve (12) fact witnesses were not disclosed until January 7, 1999.[8] Sure, Hyundai gave the *identities* of these parties on December 31, 1998, but it failed to give Texas Instruments addresses and telephone numbers of these parties' despite their prior retention by Hyundai as consultants.[9] Local Rule CV–26(b)(1)(A) requires parties "without awaiting a discovery request, [to] provide to every other party . . . [t]he name and, if known, the *address and telephone number* of each person likely to have information that bears significantly on any claim or defense. . ." *See Local Rule CV–26(c)(A).* If Hyundai had engaged these individuals as paid consultants, then surely it had their addresses and telephone numbers.

Regardless, this Court won't entertain Hyundai's hair-splitting quibble over technicalities—the eight (8) days Hyundai complains about, in light of the *several months* Hyundai sat on its knowledge of Sundstrand, is simply not that important to this Court's decision to exclude Dr. Wedig's late-filed Second Supplemental Expert Report.

Now, this Court turns to Hyundai's knowledge of Sundstrand—the alleged new prior art. In doing so, this Court will not repeat its analysis for excluding Dr. Wedig's Second Supplemental Expert Report. *See Memorandum and Opinion Order* [261] 6–7, 9. Nevertheless, to the extent that it is not (only slightly) modified above, this Court adopts the reasoning it employed in that particular order; and now it adds some more. Sundstrand as alleged prior art? Why does Texas Instruments need this and what possible motive would Hyundai have in hiding it?[10] Prior art comes in many different shapes and sizes. Patents and printed publications that were published in the United States or a foreign country are classic forms of prior art. 35 U.S.C. § 102(a) and (b). Using this type of prior art, Hyundai must show both that the patent or printed publication describes the claimed invention sufficiently to have placed the public in possession of it and that the disclosure was made publicly before the critical date, one year before the patentee filed his application (in this case, the critical date is April 16, 1970), and, if put in issue by Texas

---

**8.** In fact, this Court was right that the *identities* of the individuals were not disclosed since Hyundai mis-spelled several names of the "disclosed" witnesses—witnesses Hyundai itself had already retained as paid consultants. So technically, this Court was right since not all of the identities were properly revealed. Nevertheless, this Court will not muddle itself in technicalities and, for the sake of argument, it concedes that the "identities" were substantially provided to Texas Instruments as of December 31, 1998.

**9.** For some of the witnesses it "disclosed," Hyundai misspelled the name, failed to provide any address or phone number, and re-

fused to respond to Texas Instruments' immediate request for correction of this blatant violation of this Court's local rules. Hyundai failed to timely respond and Texas Instruments was, essentially, off on a scavenger hunt for discovery with only weeks before the beginning of trial.

**10.** Hyundai questions this Court's ruling by arguing: "What possible motive would Hyundai have for withholding this critical evidence from its *own* expert?" Memorandum and Opinion Order [261] 4. Good question. But this Court is much more interested in Hyundai's motive for withholding this information from Texas Instruments.

Instruments, prior to Texas Instruments' inventor's (Mr. Head) own conception and reduction to practice. Another type of prior art is "prior public use." This type of prior art requires a showing by Hyundai that the methods claimed in the patents were publicly used and on sale in the United States more than one year before the patent application was filed. 35 U.S.C. § 102(b). "Prior public use" can also be established by showing that the claimed invention was in public use by others in the United States prior to the invention (conception and reduction to practice) by the patentee. 35 U.S.C. § 102(a). As for Hyundai's route of proving prior art through patents and printed publications, there is, essentially, little fact discovery necessary; Hyundai quickly disclosed most of these references in response to Texas Instruments' discovery requests. However, late in the discovery process, it became apparent that Hyundai was, in fact, planning on relying upon "prior public use" as part of its invalidity defense—a more fact-intensive route to invalidity. Hyundai's disclosure of prior public use documents and witnesses was virtually non-existent prior to December 31, 1998. Obviously, Texas Instruments would be interested in seeing any prior public use documents and witnesses Hyundai intended on using at trial in an effort to prove the alleged invalidity of the '674 and '613 patents in suit. Hyundai failed to produce a single document that even alluded to prior public use until December 31, 1998. Aside from this meager New Year's Eve "disclosure," Hyundai did not produce most of the documents relating to the Sundstrand System (prior art via prior public use) upon which its invalidity expert relies prior to the close of fact discovery.

At the February 4, 1999 hearing (and through its motions), Texas Instruments presented this Court with a bleak history of Hyundai's disclosure of its knowledge of the Sundstrand System. The story centers around the sworn declaration of Mr. John Carpenter, one of Hyundai's California attorneys. Hyundai filed Mr. Carpenter's declaration in response to Texas Instruments' *Motion to Preclude Prior Art* [143] (i.e., Sundstrand). Through his sworn declaration, Mr. Carpenter told this Court: "I contacted a retired employee, Jerry Cahill, of Ingersoll–Rand [11] for the first time on about December 14, 1998. My contact with Ingersoll–Rand was through Jerry Cahill." *Carpenter Declaration.* Mr. Carpenter continued: "On December 31, 1998, Hyundai immediately disclosed Ingersoll–Rand and its witnesses in Defendants' Second Supplemental Partial Disclosure." *Id.* At the March 4, 1999 hearing, Texas Instruments successfully demonstrated that Mr. Carpenter's declaration was, to be polite, less than accurate; in fact, it was down right misleading. Mr. Carpenter's investigation into the Sundstrand System began months before what he actually told this Court. *At the very least,* the evidence showed that Mr. Carpenter, as counsel for Hyundai, began his investigation into the Sundstrand System by July 8, 1998. This is only one example of many inaccuracies contained within Mr. Carpenter's sworn declaration. [12] Suffice it to say that this Court will not be requiring any further "sworn" declarations by Mr. Carpenter—in this case or in any of the other cases currently pending in this Court between Texas Instruments and Hyundai. Aside from the minute changes made to its *Memorandum and Opinion Order* [261] by this order, this Court adopts the reasoning contained within that order. The evidence showed that Hyundai knew about the Sundstrand for several months. Indeed, Hyundai had a *full six months* (from July to December) to conduct its investigation into the Sundstrand System. Texas Instruments got *only two months* to study

---

11. "Ingersoll–Rand" is the facility that purchased the Sundstrand System.

12. Mr. Carpenter was not at the February 4, 1999 hearing; nor did he attend the March 4, 1999 hearing to explain his declaration's inaccuracies pointed out by Texas Instruments. In fact, this Court has yet to see, in person, Mr. John Carpenter.

and attempt to absorb Sundstrand documents and information that Hyundai had been investigating for, *at the very least* half a year. Moreover, Texas Instruments had only a few weeks to conduct depositions of individuals revealed by Hyundai's eleventh-hour disclosure of the Sundstrand System.[13]

None of this should come as a surprise to Hyundai. Texas Instruments anticipated Hyundai may attempt to prove invalidity through prior art. Despite Hyundai's automatic disclosure obligations under Local Rule CV–26, Texas Instruments *specifically asked* Hyundai to disclose any prior art (like Sundstrand) it intended on relying upon to allege the invalidity of the patents in suit:

[1998]

July 8: Hyundai's attorney, Mr. Carpenter, signs Mr. Baeverstad as a consultant; Mr. Baeverstad is a former employee of Ingersoll–Rand (the purchaser of the Sundstrand system). Later this month, after talking to Mr. Baeverstad, Hyundai's lawyer Mr. Carpenter signs Mr. Heimer and Mr. Osborn to consulting agreements.[14]

July 9: Texas Instruments asks Hyundai to disclose any prior art.

July 24: Hyundai's Initial Disclosure discloses only two (2) Hyundai employees.

July 29: Hyundai produces a single box of documents.

August 12: Hyundai contacts and retains former Sundstrand and Ingersoll employees.

August 28: Texas Instruments' Interrogatory No. 9 asks for prior art and persons with knowledge related to such.

September 4: This Court issues a "Discovery Order" actually reminding the parties of their initial disclosure requirements under the local rules.

October 10: Hyundai's lawyer, Mr. Carpenter, meets with Mr. Baeverstad who testified his task was to assist Hyundai in understanding the Sundstrand System.

October 16: Hyundai's Response to Texas Instruments' Interrogatory No. 9 fails to mention Sundstrand; indeed, despite being given an extension of time to answer, Hyundai's response contains only a litany of objections.

October 27: Texas Instruments sends the first of five (5) requests for identification of prior art and persons with knowledge related to such. Hyundai continues to evade Texas Instruments' requests for prior art.

October 28: Hyundai's Supplemental Initial Disclosure fails to mention the Sundstrand System.

December 18: Hyundai's supplemental response to Texas Instruments' Interrogatory No. 9 does not disclose any new prior art.

December 31: Hyundai's Second Supplemental Disclosure discloses nine (9) new

---

13. Moreover, because of Hyundai's late disclosure, Texas Instruments was, once again, forced to sacrifice trial preparation time in order to conduct discovery that, absent Hyundai's dilatory conduct, should have been completed much earlier.

14. Mr. Baeverstad's billing records confirm that he spent hours in July of 1998 speaking with Mr. Carpenter, Mr. Heimer and Mr. Osborn. Indeed, in the span of only three weeks during July, Mr. Baeverstad had seven (7) separate telephone conferences with Mr. Carpenter.

witnesses relating to the Sundstrand System (the "New Year's Eve disclosure").

**[1999]:**

January 8: Hyundai produces Dr. Wedig's Expert report disclosing three pieces of alleged prior art (including Sundstrand) which had never before been disclosed to Texas Instruments; Wedig's report identifies several pages [15] of schematics relating to this system that he reviewed, only a portion of which were previously disclosed to Texas Instruments.

January 10: Fact discovery closes.

January 11: Hyundai's Third Supplemental Disclosure supplies addresses and telephone numbers omitted in its prior disclosure in contravention of the Local Rules. This "disclosure" failed to disclose which witnesses had information on the Sundstrand System. Furthermore, it disclosed additional names and companies who Texas Instruments has since learned had information on the Sundstrand System.

Beginning January 4, 1999, Texas Instruments, through little or no help by Hyundai's New Year's Eve "disclosure," began to learn that the nine (9) fact witnesses disclosed as part of New Year's Eve disclosure were mostly paid consultants—many of whom were unreachable by Texas Instruments. For example, Conrad Aronson (identified by Hyundai as "Gus" Aronson), advised Texas Instruments that he had first been contacted by Hyundai in August of 1998 and had signed a consulting agreement with Hyundai in the Fall of 1998.[16] Texas Instruments was also able to track down James Seibel (identified by Hyundai as "Seibell") who told Texas Instruments that he too had signed a consulting agreement with Hyundai in October 1998. Finally, Texas Instruments tracked down Edward Fowler who said he was a former employee for Sundstrand retained by Hyundai in mid-December. Mr. Fowler listed several other individuals (many of whom were former Sundstrand employees) who had previously been retained by Hyundai as consultants.

Hyundai urges a litany of excuses for its last-minute disclosure of the Sundstrand System. First, Hyundai says it disclosed the identity of the nine (9) fact witnesses "as soon as it became apparent that the information was material." The documents Hyundai received on December 29, 1998 included the first project-specific documents which identified *when* the offer was accepted (i.e. *prior* art)." *Hyundai's Motion for Reconsideration* [275] 3. Hyundai didn't think the Sundstrand System was material until December 31, 1998? Well, on July 8, 1998, Harold Baeverstad was retained by Hyundai "to let them know ... what my involvement was and who I knew who would know something about the [Sundstrand] system. [Question by Texas Instruments' attorney]: Which system do you mean? [Answer by Mr. Baeverstad]: The Ingersoll–Rand [Sundstrand] system." *Baeverstad Depo.*, p. 41. Moreover, any doubt in Hyundai's mind as

---

**15.** In its *Memorandum and Opinion Order* [261] delivered March 4, 1999, this Court referenced "10,000" pages as those revealed by Dr. Wedig. Apparently, that number was the product of bates-number mis-identification. Therefore, this Court VACATES that particular language in its *Memorandum and Opinion Order* [261] delivered March 4, 1999 insofar that it suggested Dr. Wedig revealed *10,000* documents.

**16.** Texas Instruments used information obtained from Conrad Aronson ("Gus" to Hyundai) to track down Mr. Seibel ("Mr. Seibell" to Hyundai). Thanks to Hyundai's dilatory and insufficient New Year's Eve "disclosure," Texas Instruments had to undergo this investigation with trial only a few weeks away.

to the "materiality" of this prior art is belied by Texas Instruments' constant request *for this very information.* How nice it would be for a party to unilaterally decide information is, by its own interpretation, not "material" and thus not subject to this Court's mandatory disclosure rules. As for Hyundai's excuse of not having documents specifying when the Sundstrand Corporation offered its system to Ingersoll–Rand and when the offer was accepted, the Federal Rules and the Local Rules have no requirement for independent corroboration of information before disclosure.

 Hyundai cites Federal Circuit authority for the proposition that in order for the Sundstrand System to qualify as prior art for supporting its invalidity defense, "each and every element of the claimed invention must be embodied in the Sundstrand System." *Hyundai's Bench Memorandum Regarding Materials Supporting Its Opposition to TI's Re-urged Motion to Preclude Hyundai From Relying on the Sundstrand System as Prior Art 3.* This Court does not question that authority. It does, however, question Hyundai's application of that authority to this Court's local rules. Hyundai argues that prior to December of 1998, "[a]ll that Hyundai had found was vague conjectures of possible anticipation based on the 30–year old memories of three men who had designed the manufacturing system in or before 1970." *Id.* at 6. Since Hyundai had not yet formed the basis of an invalidity defense prior to December of 1998 (i.e., since Hyundai had yet to find *each and every element* of the patents in suit embodied in the Sundstrand System), "the system, as it was understood prior to late December 1998 did not bear significantly on Hyundai's invalidity defense." *Id.* Such an interpretation of this Court's local rules is troubling; for it allows the exception to

swallow Local Rule CV–26. Hyundai suggests that, as a defendant in a patent infringement lawsuit, it need not honor this Court's mandatory disclosure requirements *until it believes its evidence can establish each and every element of the patents in suit are embodied in the prior art.* Such an approach to Local Rule CV–26 is antithetical to its purpose. Hyundai's interpretation of Local Rule CV–26 would permit a defendant in a patent infringement lawsuit to conduct a thorough investigation into prior art—contact witnesses, locate documents, retain "consultants," and so on—all without disclosure to the plaintiff. The fact that Hyundai must prove prior art by clear and convincing evidence is simply irrelevant as to whether Hyundai should have disclosed its knowledge of the Sundstrand System. Hyundai's interpretation of Local Rule CV–26 would permit a patent infringement defendant to conduct a surreptitious and thorough investigation into a prior art defense and, when *it believes* it has become "material," then spring that defense on an unsuspecting plaintiff on the eve of trial.[17]

Hyundai began its investigation into the Sundstrand System *at the very latest* by July 8, 1998. One day later, Texas Instruments embarked upon a hopeless cause—getting Hyundai to honor its mandatory disclosure obligations under Local Rule CV–26. *Mandatory disclosure obligations.* Texas Instruments had no obligation to urge Hyundai's disclosure of the Sundstrand System. Despite having absolutely no obligation to do so, Texas Instruments literally begged Hyundai to disclose any prior art it may be intending to use at trial (i.e., the Sundstrand System). Indeed, as early as September 4, 1999, this Court actually reminded Hyundai of its mandatory disclosure obligations under the local rules: "Pursuant to this Court's Local

---

**17.** Even more troubling is the inability of this Court to prevent recalcitrant defendants from refusing to come forward with prior art until *that defendant* believes it is ready to do so. Local Rule CV–26 is not a *carte blanche* for patent infringement defendants to conduct surreptitious investigations into prior art; and the implication that patent infringement defendants should be excluded from this Court's mandatory disclosure requirements is unworthy of response.

Rule CV–26(c), all parties are to have begun making initial disclosures." [18] *Discovery Order* [5]. Rather than identify documents and individuals relating to the Sundstrand System ("prior art"), Hyundai simply refused to honor Texas Instruments' requests and this Court's local rules.

■ This Court makes the following findings:

1) Hyundai began an investigation into the Sundstrand System as prior art *at the very latest* by July 8, 1998.

2) As early as July 9, 1998, Texas Instruments began requesting Hyundai to disclose any alleged prior art, which included the Sundstrand System.

3) Beginning August, 28, 1998, Texas Instruments asked, in writing as Interrogatory No. 9, Hyundai to disclose any alleged prior art and any persons with knowledge related to such.

4) Hyundai was required, both under the Federal Rules and the Local Rules (as reminded by this Court's *Discovery Order* [5] ), to immediately disclose its knowledge of the Sundstrand System as prior art, and to disclose any persons with knowledge related to such.

5) Despite repeated requests by Texas Instruments to supplement its deficient response to Interrogatory No. 9, Hyundai failed to timely disclose its knowledge of the Sundstrand System and its concomitant fact witnesses.

6) Hyundai's dilatory disclosure of the Sundstrand System and its concomitant fact witnesses caused prejudice to Texas Instruments which was forced to sacrifice valuable trial preparation time in order to perform last-minute discovery that Hyundai should have provided to Texas Instruments months before the eve of trial. After undertaking its own investigation of Hyundai's knowledge of Sundstrand, Texas Instruments uncovered new witnesses and new documents previously concealed by Hyundai for, *at the very least,* half a year.

7) Specifically, Hyundai's last-minute disclosure of the Sundstrand System and its concomitant witnesses left Texas Instruments only two (2) months (which should have been devoted to trial preparation) to examine and absorb the various facets of the Sundstrand System that Hyundai had been investigating for half a year. Moreover, Texas Instruments got only a few weeks before trial to take the depositions of many of Hyundai's late-disclosed Sundstrand witnesses.

8) Finally, in an effort to prevent exclusion of the Sundstrand System as prior art, Hyundai's lawyer, Mr. John Carpenter, submitted to this Court a misleading, sworn declaration that, in fact, concealed the depth of Hyundai's investigation into the Sundstrand System—an investigation apparently spear-headed by Mr. Carpenter himself.

Hyundai moved this Court to reconsider its decision to exclude Dr. Wedig's dilatory Second Supplemental Expert Report. That report was not only filed out of time, it was replete with references to and reliance upon the late-disclosed Sundstrand System. Accordingly, this Court excluded that supplemental report from trial. This Court refuses to vacate that decision.

As the trial of this case began to unfold, the depth of Hyundai's concealment of the Sundstrand System from Texas Instruments became more apparent. It soon became apparent that Texas Instruments was, in fact, the victim of Hyundai's tacti-

**18.** As noted in a previous order, this *Discovery Order* [5] was issued as a generic reminder to both parties. However, as this Court later revealed, it was, in fact, issued as a response to Hyundai's initial (and eventually perpetual) recalcitrance toward this Court's mandatory disclosure requirements.

cal delay. Rather than taking the form of a motion for continuance, motion for transfer, or motion to bifurcate, this Hyundai dilatory tactic manifested itself as refusal to timely disclose a critical portion of its invalidity defense—the Sundstrand System. At this Court's invitation, Texas Instruments has now re-urged *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense* [143].

To permit Hyundai to present evidence relating to the Sundstrand System would endorse a veritable grab-bag of inexcusable conduct. Hyundai began investigating the Sundstrand System as prior art almost half a year before disclosing it to Texas Instruments despite Texas Instruments' repeated requests for alleged prior art and this Court's mandatory disclosure requirements. In support of its opposition to Texas Instruments' motion to preclude Hyundai from relying on this late-disclosed, alleged prior art, Hyundai submitted the misleading, sworn declaration of Mr. John Carpenter, one of its attorneys. Then, after Hyundai finally "revealed" the fact witnesses related to the Sundstrand System on December 31, 1998 (the "New Years Eve disclosure"), Hyundai misspelled the names of several of the witnesses and omitted their addresses and telephone numbers—despite having retained many of these individuals as paid consultants. As a result of Hyundai's late disclosure of the Sundstrand System, Texas Instruments was deprived time to conduct in-depth discovery of this alleged prior art; moreover, Texas Instruments was forced to sacrifice valuable trial preparation time in order to conduct last-minute discovery that *Hyundai* should have provided almost half a year ago. With trial underway, the prejudice occasioned upon Texas Instruments through Hyundai's failure to timely disclose its knowledge of the Sundstrand System has now become fully apparent to this Court: Texas Instruments was denied half a year of discovery of the Sundstrand System; moreover, after Hyundai finally disclosed the Sundstrand System to Texas Instruments, the attor-

neys for Texas Instruments were forced to investigate and perform discovery that Hyundai should have provided half a year ago. The net result of Hyundai's last-minute ambush with the Sundstrand System has been the simultaneous deprivation of critical discovery *and* valuable trial preparation time—both of which, quite obviously, are extremely valuable to any party to such complex litigation.

A word about Hyundai's local counsel: This Court lays blame for all of Hyundai's misconduct (late disclosure, misleading declarations, and so on) at the feet of Hyundai—not Hyundai's local counsel. At the March 12, 1999 hearing on Texas Instruments' re-urging of *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense ("Motion to Preclude Prior Art")* [143], this Court made that crystal clear.

> I do not question lead counsel, Mr. Williams, or yourself [Mr. Ward] with regard to the timeliness and the process by which you supplied the information. I have no question personally in that regard. I do, in fact, question—continuously question the fact that it is so obvious and apparent, and no one has come forward to explain the Carpenter declaration. It is both an embarrassment, an affront and a sense of deliberate indifference—not to me, but to this court—that the Carpenter declaration should be allowed to exist. I have not heard an explanation as to why Mr. Carpenter, who knew so much, said so little at such a late time. I do not lay that at your [Mr. Ward] feet, I do not lay it at Mr. Williams' feet, I lay it at Hyundai's feet. And I have not heard from Hyundai yet. I look at all the faces out there, and I see none standing ready to explain it.

*Trial Transcript,* 869–70.

Mr. T. John Ward and Mr. Danny Williams—Hyundai's local counsel—have been consistently candid and forthright with this Court. Mr. Ward and Mr. Williams were not a part of Hyundai's

dilatory disclosure and recalcitrance to this Court's mandatory disclosure obligations;[19] nevertheless, both Mr. Ward and Mr. Williams appeared at a hearing for the misconduct of attorneys who are either unavailable or unwilling to answer for *their own* misconduct.[20] This Court is not unmindful of the strong language it has used in prior orders delineating Hyundai's conduct throughout this litigation. But let's be crystal clear about one thing: any strong language used during this litigation is *not* directed toward Mr. Ward or Mr. Williams. It is directed toward Hyundai. Indeed, this Court will continue to rely on the consistent candor and accuracy of Mr. Ward's and Mr. Williams' representations, as it has done throughout this litigation.

Nevertheless, Hyundai and its absentee litigation team (unfortunately) do not share in the candor and accuracy of Mr. Ward and Mr. Williams. Therefore, for the reasons stated above. and, in particular, after closer examination of Mr. Carpenter's misleading declaration submitted to conceal from this Court Hyundai's knowledge of the Sundstrand System and its concomitant fact witnesses, this Court

hereby VACATES its *Memorandum and Opinion Order* [261] insofar as it admitted information provided to Texas Instruments regarding the Sundstrand System prior to Dr. Wedig's Second Supplemental Expert Report filed February 8, 1999. This Court GRANTS in its entirety *Texas Instruments' Motion to Preclude Hyundai from Relying Upon Certain Alleged Prior Art as Part of its Invalidity Defense* [143].[21] Finally, this Court reminds, once again, all parties of their automatic disclosure obligations under Local Rule CV–26 for the remaining six cases in this Court pending between Texas Instruments and Hyundai.

It is SO ORDERED.

19. Indeed, Mr. Williams did not come on board as Hyundai's local counsel until November of 1998—months after Hyundai's dilatory conduct had begun.

20. As noted in a previous order, Hyundai's litigation team literally spans the nation. Logistics dictate that local counsel rely on representations made to them by co-counsel situated miles away in other states (like relying on a California lawyer's sworn declaration in a Texas court).

21. Hyundai suggests a continuance could rectify the Sundstrand issue. First of all, a continuance would prejudice Texas Instruments which, by no fault of its own, would be forced to delay its day in court (already delayed by Hyundai's last-minute amendment to its answer requiring a subsequent bench trial on the defense of patent misuse). It's not Texas Instruments' fault that Hyundai concealed Sundstrand in total disregard for Texas Instruments' requests and this Court's local rules. Moreover, this Court notes that this is the first of *seven* cases between Texas Instruments and Hyundai in this Court. These are complex patent cases which absorb much of this Court's time and effort. Considering this Court's Beaumont and Marshall dockets, a continuance would only add complexity and delay to already busy dockets. Finally, trial of this case is underway. As this Court writes, Texas Instruments is wrapping up its case-in-chief. Although this Court initially heard this motion roughly a month ago, it held in abeyance any decision pending further discovery by Texas Instruments. Now, that discovery has revealed Hyundai's extensive knowledge of Sundstrand *for at least half a year* prior to its revelation. Worse, Texas Instruments' additional discovery revealed a Hyundai attorney's extensive investigation into Sundstrand beginning in early July of 1998—an attorney who led this Court to believe first contact with Sundstrand was not until late December of 1998. Simply put, there is no reason to force a continuance upon Texas Instruments in an effort to cure Hyundai's misconduct.